BISCHOFF, J. (concurring). The verdict for the plaintiff was wholly without support, and the state of the evidence warranted the direction of a verdict for the defendant. The action was by the indorsee against the maker upon an alleged check received from the payee, and the defense was that the check had been altered in a material respect after it was issued, in that the date was changed from September 7, 1903, to September 3, 1903, on which last-mentioned day the plaintiff claimed to have acquired the check for value.

The alteration, if made without the maker's authority, was material, and operated to defeat any recovery thereon (Crawford v. West Side Bank, 100 N. Y. 50, 2 N. E. 881, 53 Am. Rep. 152), and though there was no presumption that the alteration, which was plainly apparent, was made after it was issued (Maybee v. Sniffen, 2 E. D. Smith, 1), it remained that, after impeaching testimony for the defendant, the burden of proving that the alteration was made before the check was issued was upon the plaintiff; he asserting the execution by the defendant of the particular instrument sued upon in the form in which it was produced (Farmers' Loan & Trust Co. v. Siefke, 144 N. Y. 354, 39 N. E. 358).

For the defendant, it appeared from his own testimony and that of Dimmock, an apparently wholly disinterested witness, that at the time when the check was given to Reed, the payee, it bore date as of September 7, 1903, and as against this the plaintiff contented himself by showing no more than that when he received the check from Reed, on September 3, 1903, the date had been altered to that day. An alteration in the date was plainly apparent, and, obviously, the fact alone that the alteration had taken place before the plaintiff received the check in no wise challenged the accuracy of the testimony of the defendant's witnesses that the alteration was made after the check was issued to Reed. The question involved upon the trial was simply whether the defendant had issued the instrument sued upon, as the plaintiff asserted he did; and since there was no presumption that the alteration had occurred after the check was issued, the fact of the alteration, however apparent, did not suffice to raise any question as to whether the plaintiff was a "holder in due course," within the meaning of Negotiable Instruments Law, Laws 1897, p. 732, c. 612, § 91, in that he had notice of some infirmity in the instrument.

The order should be affirmed, with costs.

---

(50 Misc. Rep. 335)

### CAREY v. MANHATTAN RY. CO.

(Supreme Court, Appellate Term. April 24, 1906.)

MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.
    In an action by a servant for personal injuries alleged to have been caused by defectively insulated electric wire, evidence *held* insufficient to justify submission to the jury of the issue of defendant's negligence.

Appeal from City Court of New York, Trial Term.

Action by John Carey against the Manhattan Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued before SCOTT, P. J., and TRUAX and BISCHOFF, JJ.

Charles A. Gardiner (M. W. Gallaway, of counsel), for appellant.
Charles P. Rogers (J. Brownson Ker, of counsel), for respondent.

SCOTT, P. J.   The plaintiff was in the employ of defendant as an iron worker on its elevated structure, and on the day of the accident from which he suffered injuries was one of a gang engaged in drilling holes directly under the top girder of the track.   A foreman had previously marked the places at which the holes were to be drilled.   The plaintiff had been engaged in similar work in the immediate neighborhood for several days, and for about nine months had been engaged in doing similar work on various parts of defendant's structure, during which time the road had been operated electrically through what is known as the "third rail system."   At the point at which plaintiff was working at the time of the accident certain wires, four or six in number, pass under the structure, attached thereto rather loosely, so that they are movable, and serve to carry the electrical current to the third rail.   In drilling the holes the plaintiff and his co-workers used a series of contrivances or tools known as a "knee," a "ratchet," and a "clamp."   The knee, consisting of a piece of double-angled iron, weighing about 29 pounds, is attached to the ironwork in which the hole is to be drilled by the clamp, weighing about 25 pounds, and between the iron and the knee is inserted the ratchet, weighing about 14 pounds, into which the drill is fixed.   The gang was engaged in setting up the ratchet upon an upright girder, preparatory to drilling a hole therin; plaintiff holding up the knee, which was being clamped to the structure. Plaintiff and his companions observed the feed wires in close proximity to their tools, but paid no particular attention to them, and took no precaution against touching them with their tools while engaged in clamping the knee and the ratchet.   Before this work was completed, there was an explosion and blinding flash, whereby plaintiff was seriously burned and injured.   There can be no doubt that this explosion was caused by contact between one of the iron tools and one of the feed wires, resulting from some break or defect in the insulation of the wire.   No direct evidence of insufficient, imperfect, or defective insulation was offered; the plaintiff contenting himself with showing that the explosion could not have occurred unless there had been some break or defect in the insulation at the point of contact and at the moment of contact, and arguing therefrom that this proof, with proof of the explosion, warranted the jury in finding that the defendant had been negligent either in failing to provide properly insulated wire in the first instance, or in failing to keep it properly insulated after it had been installed.   This seems to us to be an attempt unwarrantably to extend the doctrine of res ipsa loquitur, for it implies the drawing of an inference from the mere happening of the accident, that the defect in the insulation, which concededly must have existed at the moment of the explosion, had existed previously for a sufficient time to impute notice to the defendant.   The circumstances as disclosed by the evidence warrant no such inference.   It was clearly shown that the insulation was originally quite sufficient for the use to which the wire was to

be put, and that it had been in place but·a comparatively short time, and that it was frequently and regularly inspected by a competent and experienced employé of the defendant; one of such inspections having taken place only a few days before the accident happened. It also appeared that it was quite possible, if, indeed, not probable, that the insulation might have been abraded by the acts of the plaintiff and his fellows in setting up their tools; in short, there was an entire lack of proof that the insulation was imperfect at any moment before the accident happened, that the wire was improperly insulated when installed, or that the defendant had failed in its duty of frequent inspection. The jury were thus left to conjecture that, owing to some negligence not specified and not disclosed by the evidence, the defendant had failed in its duty towards plaintiff. The most that can be said upon the evidence as presented is that it leaves it unexplained when the insulation became abraded, or how the abrasion occurred. This was not sufficient to justify the submission of the cause to the jury.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.