(115 App. Div. 141)

## KIERNAN v. EIDLITZ et al.

(Supreme Court, Appellate Division, First Department.   October 19, 1906.)

1. APPEAL—REVERSAL—RETRIAL—LAW OF THE CASE.

Where, in an action for death of a servant, a judgment for plaintiff was reversed on appeal, and the court held that under the facts the questions of intestate's contributory negligence and assumed risk were for the jury, such statement constituted the law of the case on a retrial.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, §§ 4661–4665.]

2. MASTER AND SERVANT—EMPLOYERS' LIABILITY ACT—ASSUMED RISK.

Employers' Liability Act, Laws 1902, p. 1750, c. 600, § 3, provides that an employé, by entering or continuing in the service of the employer, shall be presumed to have assented to the necessary risks of the employment. Such risks are defined as those inherent in the nature of the business, after the employer has exercised due care and has complied with the laws regulating the business, and that the fact that the employé continued in the service after discovering the danger would not, as a matter of law, constitute an assumption of the risk, but the question should be one of fact for the jury. *Held*, that such act did not eliminate the doctrine of assumed risk, even though the negligence alleged was the master's failure to furnish statutory safeguards, but that the question whether the risk was assumed was one of fact for the jury.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 544–546.]

Appeal from Trial Term, New York County.

Action by Kate Kiernan, as administratrix of the estate of John Kiernan, Jr., deceased, against Otto M. Eidlitz and another. From a judgment in favor of plaintiff, and from an order denying defendants' motion for a new trial, they appeal. Reversed.

For opinion on former appeal, see 96 N. Y. Supp. 387.

Argued before O'BRIEN, P. J., and INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

Frank V. Johnson, for appellants.

Ford & Tuttle (John Ford, of counsel), for respondent.

CLARKE, J.   This is an action to recover damages for the death of the plaintiff's intestate because of injuries alleged to have been sustained through the negligence of the defendants.   The defendants had the contract to do the mason work in the erection of a building in the city of New York.   Others had contracted to do the carpenter work and plastering.   Plaintiff's intestate was a helper to defendants' masons. There was an elevator shaft in the building, in which was an elevator used by defendants for the purpose of lifting materials used by them in the construction of the building.

Section 20 of the labor law, as amended by chapter 192, p. 351, of the Laws of 1899, provides that:

"If elevating machinery or hoisting apparatus are used within a building within the course of construction, for the purpose of lifting materials for the use of such construction, the contractor or owner shall cause the opening on each floor to be enclosed or fenced in on all sides by a barrier at least eight feet high."

At the time of the accident this elevator shaft was unguarded. The intestate was engaged in transferring materials for the use of the masons from the elevator. It was necessary for him to walk upon planks from the front of the elevator around to the opposite side thereof to the arches which the masons were constructing. As he was thus engaged, one of the planks broke, and he fell through the elevator shaft or hoistway to the subcellar and was killed. It was conceded upon the trial that the defendants were not liable by reason of any defect in the plank which broke, the breaking of which was the immediate cause of his falling. The action was brought under the employers' liability act (chapter 600, p. 1748, Laws 1902). This case was before this court on a former appeal (109 App. Div. 726, 96 N. Y. Supp. 387). In that case the judgment was reversed because the trial court had decided as matter of law that the defendants were negligent, that the plaintiff's intestate was not guilty of contributory negligence, and that he had assumed no risks incident to the absence of barriers about the elevator shaft, which prevented a recovery, and submitted to the jury only the question of damages. In the case at bar the learned court submitted to the jury but two questions—the contributory negligence of the plaintiff's intestate, and the negligence of the defendants in not having railings around the opening. At the close of the main charge, by various requests the defendant endeavored to obtain from the court an instruction with reference to obvious risks, all of which the court declined to charge. There was no allusion in any part of the charge to the jury of the assumption of the obvious risks of the employment, notwithstanding the fact that this court had said in its opinion on a former appeal:

"There remained the questions to be determined of the contributory negligence of the plaintiff's intestate and the assumption of obvious risk by him. The fact that the action is brought under the employers' liability act eliminated neither of these questions. Both still remain, whether the action be under section 1902 of the Code of Civil Procedure or under the employers' liability act, and both, under the facts disclosed by the record, became questions for the jury to determine."

Even if there were doubt as to the proposition laid down, yet, nevertheless, it contained a statement of the law of the case which should have controlled the trial court upon the new trial ordered. It is clear, however, that the statement of the law is correct.

The fact that the learned trial court left a question of whether or no the intestate had been guilty of contributory negligence did not meet the direction of this court. In Dowd v. N. Y. C. & W. R. R. Co., 170 N. Y. 459, 63 N. E. 541, it was said:

"The doctrine of assumed risks rests upon the implication of a promise by the employé to waive the consequences of the dangers of which he is fully aware. It is distinct in principle from the doctrine of contributory negligence, although they have frequently been confounded by the courts. * * * One who is injured by his own negligence is regarded by the law as not having been injured at all, so far as other parties are concerned. By assuming the risk, the plaintiff does not intervene, but waives. Intervention, in order to break the causal connection between the negligent act and the injury, must come in between them. The assumption of the risk does not come in between, but is in advance of both. The independent will of the plaintiff is not exercised by intervening, but by voluntarily waiving and releasing, when he

enters the service, any right of action which might accrue to him from the cause stated."

And in Drake v. Auburn City Railway Co., 173 N. Y. 466, 66 N. E. 121, the court said:

"The rule of the assumption of obvious risks does not rest wholly upon the implied agreement of the employé, but on an independent act of waiver, evidenced by his continuing in the employment with a full knowledge of all the facts."

In Maltbie v. Belden, 167 N. Y. 307, 60 N. E. 645, 54 L. R. A. 52, the court held:

"A servant assumes not only the risks incident to his employment, but all dangers which are obvious and apparent; and so, if he voluntarily enters into or continues in the service, having knowledge, or the means of knowing, the dangers involved, he is deemed to assume the risks, and to waive any claim for damages against the master in case of personal injury."

So that prior to the passage of the employers' liability act it was the law of the state that a servant assumed the obvious risks of his employment, and if it clearly appeared that the injury was the result of such obvious risk as matter of law he could not recover damages. In this state of the law the Legislature passed chapter 600, p. 1748, of the Laws of 1902, which is entitled "An act to extend and regulate the liability of employers to make compensation for personal injuries suffered by employés." Section 3 thereof provides that:

"An employee by entering upon or continuing in the service of the employer shall be presumed to have assented to the necessary risks of the occupation or employment and no others. The necessary risks of the occupation or employment shall, in all cases arising after this act takes effect be considered as including those risks, and those only, inherent in the nature of the business which remain after the employer has exercised due care in providing for the safety of his employees, and has complied with the laws affecting or regulating such business or occupation for the greater safety of such employees. In an action maintained for the recovery of damages for personal injuries to an employee received after this act takes effect, owing to any cause for which the employer would otherwise be liable, the fact that the employee continued in the service of the employer in the same place and course of employment after the discovery by such employee, or after he had been informed of the danger of personal injury therefrom, shall not, as a matter of law, be considered as an assent by such employee to the existence or continuance of such risks of personal injury therefrom, or as negligence contributing to such injury. The question whether the employee understood and assumed the risk of such injury or was guilty of contributory negligence, by his continuance in the same place and course of employment with knowledge of the risk of injury shall be one of fact, subject to the usual powers of the court in a proper case to set aside a verdict rendered contrary to the evidence."

It is quite apparent, on careful reading of the act, that the doctrine of the assumption of obvious risk has not been eliminated in an action by an employé against his employer, even if the negligence alleged be the failure to obey the strict provisions of the law as to furnishing of safeguards against injury by the employé. If that omission is obvious, the assumption of the risk is not assumed as matter of law, entitling the employer to a direction by the court, but the question whether the employé understood and assumed the risk of such injury shall be one of fact, and, of course, if one of fact, to be submitted to the jury;

in other words, the doctrine of the assumption of obvious risks is still preserved, but the tribunal to pass upon the question whether they were assumed with knowledge and understanding is changed from the court to the jury. If the absence of the guard rail was the cause of the accident, the physical fact of its absence was as obvious to the employé, as to the master or his superintendent. But the statute says whether the employé understood and assumed the risk caused by the failure to erect and keep the guard rail there must be submitted to the jury. This interpretation of the statute has the authority of the following cases: Vaughn v. Glens Falls Cement Co., 105 App. Div. 136, 93 N. Y. Supp. 979; Di Stefano v. Peekskill Lighting & R. Co., 107 App. Div. 294, 95 N. Y. Supp. 179; Wynkoop v. Ludlow Valve Manufacturing Co., 112 App. Div. 729, 98 N. Y. Supp. 1076; and Reilly v. Troy Brick Co., 184 N. Y. 399, 77 N. E. 385, where Judge Werner said:

"It is true that the plaintiff's intestate was there daily, and that his experience, even as an ordinary laborer, might have enabled him to anticipate the danger quite as thoroughly as his superior ought to have done; but whether he assumed that particular risk, or was guilty of contributory negligence under the circumstances detailed, were questions of fact for the arbitrament of a jury."

Therefore, it follows that the defendants, by the refusal of the learned court to submit to the jury the question of the assumption of obvious risk as a question of fact, were deprived of a substantial right.

It follows that the judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

(51 Misc. Rep. 71.)

## PEOPLE v. JACOBS.

### (Onondaga County Court. June, 1906.)

1. CRIMINAL LAW—APPEAL FROM COURT OF SPECIAL SESSIONS—NOTICE OF APPEAL.

Under Code Cr. Proc. § 751, an appeal from the determination of a Court of Special Sessions may be taken both from the judgment and from the commitment, and a notice of appeal from "such conviction and sentence," stating that the sentence and commitment are illegal, shows the intent of the appellant to review the commitment as well as the judgment.

2. SAME—COMMITMENT—VALIDITY.

A commitment of a Court of Special Sessions which states that defendant was convicted of the assault, but does not show the degree thereof as required by Code Cr. Proc. § 721, nor state facts showing that the crime was one of which the court had jurisdiction and not a felony, is cause for reversal of the judgment and discharge of defendant.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 562–566.]

Appeal from Justice Court.

Edward Jacobs was convicted of assault, and appeals. Reversed, and defendant discharged.

Irving J. Higbee, for appellant.
George W. Standen, Asst. Dist. Atty., for the People.