## CAREY v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department.    December 7, 1906.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—FAILURE TO WARN—QUESTION FOR JURY.

In an action by a servant working on an elevated track for injuries received from a short current passing from a wire on which the insulation was broken, evidence considered, and *held* to require submission to the jury of the question of defendant's negligence in failing to warn as to the latent danger.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 972, 1044–1050.]

2. SAME—CONTRIBUTORY NEGLIGENCE—ELECTRIC WIRES.

Contributory negligence of a servant working on an elevated track, who was injured by a short current passing through the heavy iron tool with which he was working in close proximity to a wire which passed under the structure connecting with the third rail, is not necessarily shown from the mere fact that he himself accidently broke the insulation, where it further appears that he had never been warned as to such wires and was ignorant of the danger lurking therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 706–709.]

Appeal from Appellate Term.

Action by John Carey against the Manhattan Railway Company. From a determination of the Appellate Term (98 N. Y. Supp. 668), reversing a judgment of the City Court in favor of plaintiff and an order denying a motion for a new trial, plaintiff appeals. Judgment of the Appellate Term reversed, and judgment of the City Court reinstated.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Charles P. Rogers (Delevan A. Holmes and J. Bronson Ker, on the brief), for appellant.

Charles A. Gardiner (M. W. Galloway, of counsel), for respondent

CLARKE, J.    The plaintiff was in the employ of defendant as an ironworker on its elevated structure, and, on the day of the accident from which he suffered injuries, was one of a gang engaged in drilling holes directly under the top girder of the track.    A foreman had previously marked the places at which the holes were to be drilled.    The plaintiff had been engaged in similar work in the immediate neighborhood for several days, and for about nine months had been engaged in doing similar work on various parts of defendant's structure, during which time the road had been operated electrically through what is known as the "Third-Rail System."    At the point at which plaintiff was working at the time of the accident, certain wires, four or six in number, pass under the structure, attached thereto rather loosely, so that they are movable, and served to carry the electrical current to the third rail.    In drilling the holes, plaintiff and his co-workers used a series of contrivances or tools known as a "knee," a ratchet, and a clamp.    The knee, consisting of a piece of double-angled iron weighing about 29 pounds, is attached to the ironwork in which the hole is to be drilled by the clamp, weighing about 25 pounds, and between the

iron and the knee is inserted the ratchet, weighing about 14 pounds, into which the drill is fixed. The gang was engaged in setting up the ratchet upon an upright girder preparatory to drilling a hole therein, plaintiff holding up the knee, which was being clamped to the structure. Plaintiff and his companions observed the feed wires in close proximity to their tools, but paid no particular attention to them, and took no precaution against touching them with their tools while engaged in clamping the knee and the ratchet. Before this work was completed there was an explosion and blinding flash, whereby plaintiff was burned and seriously injured. There can be no doubt that this explosion was caused by contact between one of the iron tools and one of the feed wires, resulting from some break or defect in the insulation of the wires.

The evidence fairly establishes that there must have been a defect in the insulating material either existing prior to the occurrence or caused at the moment thereof by abrasion from the heavy iron tools or implements then used by the plaintiff and his gang. The plaintiff had a verdict upon the trial in the City Court, which was reversed upon appeal to the Appellate Term of this court. We would be quite satisfied with the disposition of the case by that learned court were it not for the fact that no attention seems to have been paid to the duty laid upon the master when he sets an employé at work in a place hazardous by reason of hidden dangers known to the master and unknown to the employé. It has always been the law that an employé assumes the obvious risks of his employment, and the employers' liability act, chapter 600 of the Laws of 1902 (Laws 1902, p. 1748), has modified the rule only in so far as to require a submission of the question to the jury as one of fact whether the employé understood and assumed the risk of injury. Kiernan v. Eidlitz, 109 App. Div. 726, 96 N. Y. Supp. 387.

But it is the obvious risk that is assumed. Latent, hidden dangers known to the employer and unknown to the employé, of which no information or warning or instruction has been given, are not assumed. The duty of the master is to furnish a safe place in which to perform the work. This master's duty cannot be delegated. There are kinds of work which are inherently unsafe, and can only be prosecuted with the utmost care and caution. When danger lurks in apparently harmless instrumentalities, the duty of instruction and warning is imperative. A stick of dynamite carries no terrors to the ignorant. A wire may transmit by an innocuous current the messages of commerce or of social life through the inducive agency of the telegraph or telephone instrument, or it may carry an electric current for light or motive power of such force and intensity as, if interfered with, to cause instant death. To inform and instruct under such circumstances becomes part of the duty of the master which cannot be delegated. This obligation the defendant seems to admit and to have realized upon the trial. Its superintendent of structure, Riley, testified:

"It was my duty to instruct those men as to the dangers attending their work, and caution them to be careful of the third rails and wires. I was directed to do so by a superior officer, the road engineer, Mr. Lockwood. He directed me to instruct my foremen, and my directions to the foremen were to warn their men. It is a fact that I did instruct the foremen under my

direction. I instructed .Kehoe and Fitzgerald. I gave instructions to them to warn their men of the dangers attending contact with the third, rail or wire."

If this testimony stood for its full value and uncontradicted, it would appear that the defendant performed its duty. But Fitzgerald, the foreman of riveters, under whose orders the plaintiff was, testified:

"I did have instructions from Mr. Riley, the general supervisor, to warn my men as to all dangers connected with electricity on the road, of all dangers, but there was no reference made to the wire. * * * I did not give them any caution as to letting them come in contact with the electric wires. I referred more or less to the third rail. I did not know just what danger there was to those wires. These wires that ran from one side of the structure to the other were connected with the third rail. * * * I did not instruct them about any danger connected with the electric wire particularly, because I knew nothing about it. I did not get any instructions myself to that effect."

The plaintiff testified:

"I do not know what the purpose of these wires was—what they were used for. I don't know what they were used for, not when I went there, and I don't know yet; I had not any experience. I was hired to use the ratchet; that is all I was doing while I was on the road. During all the year I was on the road I never heard what any of these wires were for; I had seen them, but never passed any remark about them; did not know what they were."

It appearing that the plaintiff had to work with heavy iron tools in close proximity—two inches—to these wires, and that they carried a heavy current of electricity, it seems to me that if we assume that the wires were of the best quality as to insulation, that they had been properly inspected by a competent inspector within a few days of the accident, that no flaw in the insulating covering had been discovered, and even assume that in the process of adjusting this knee and brace the plaintiff himself had caused a break in the covering of the wire, and that thereby a short circuit was established, it yet remained a question for the jury whether the defendant had been negligent in failing to properly warn and instruct the plaintiff. If so, and the accident resulted therefrom, then the fact that plaintiff may have caused the short circuit by allowing the tool to come in contact with the wire would not necessarily defeat him. Conduct which, with knowledge, would constitute contributory negligence, without knowledge or warning or instruction might not. Whether or not an act is negligent must always depend upon the attendant circumstances.

The case presented questions of fact requiring submission to the jury. The learned trial court submitted the question of negligence of the defendant, and specifically the question of whether or not it failed in its duty of proper warning and instruction, and the question of the contributory negligence of the plaintiff. The jury resolved the questions involved in favor of the plaintiff, and we find no grounds upon which that verdict should be disturbed.

The determination of the Appellate Term should be reversed, and the judgment entered on the verdict reinstated, with costs and disbursements here and at the Appellate Term. All concur.