ORTOLANO v. DEGNON CONTRACTING CO.

(Supreme Court, Appellate Division, First Department. June 14, 1907.)

1. MASTER AND SERVANT—INJURY TO SERVANT—NOTICE OF INJURY—SUFFICIENCY.

Under Employer's Liability Act, Laws 1902, p. 1749, c. 600, § 2, providing that no action shall be maintained thereunder unless notice of the time, place, and cause of the injury is given to the employer, a notice that an employé sustained injuries, including a cut in his left hand, while

working at or near a designated place, and that the injuries resulted from the employer's negligence in not providing a proper and suitable place in which to work, is insufficient on which to base an action under the act.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 806.]

**2. SAME—EVIDENCE.**

An employé and co-employés were engaged in putting hydraulic jacks to support the roof of a tunnel. While putting a jack in place, one fell down and the ceiling fell, injuring the employé. The employé and co-employés were instructed to get timber and braces to protect themselves. There was nothing to show the manner in which the accident occurred or its cause. *Held* insufficient to establish liability for negligence either at common law or under Employer's Liability Act, Laws 1902, p. 1748, c. 600, making an employer liable for injuries to employés caused by defects in the ways, works, or machinery used in the business, or by reason of the negligence of any person intrusted with and exercising superintendence.

**8. SAME.**

Where, in an action for injuries to an employé engaged with co-employés in putting hydraulic jacks to support the ceiling of a tunnel in consequence of the fall of the ceiling, the evidence showed that, if the place was unsafe, it was made so by the employé and the co-employés, the court erred in refusing to charge that, if the employé's injuries were received through the negligence of a fellow servant, there could be no recovery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1162–1167.]

**4. SAME—ASSUMPTION OF RISK.**

Under Employer's Liability Act, Laws 1902, p. 1750, c. 600, § 3, declaring that an employé assents to necessary risks of his employer, etc., an employé assumes the risks incident to the work after the place in which he is to work is made reasonably safe, together with other risks as may be determined by the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 538–543, 550.]

Appeal from Trial Term, New York County.

Action by Joseph Ortolano against the Degnon Contracting Company. From a judgment of the Appellate Term affirming a judgment of the City Court in favor of plaintiff, and from an order denying a motion for a new trial, defendant, by leave, appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

James F. Donnelly, for appellant.

Henry J. Goldsmith (Frederick E. Goldsmith, on the brief), for respondent.

LAUGHLIN, J. The action is brought by an employé to recover damages for personal injuries alleged to have been sustained through the negligence of the defendant, his employer. The case was submitted to the jury upon the theory that the action was brought under the employer's liability act, so-called (chapter 600, p. 1748, Laws 1902). We are of opinion that the judgment is erroneous for three reasons: (1) That, considered as an action under the employer's liability act, the notice given to the defendant was insufficient; (2) that the facts

did not bring the case within the employer's liability act; and (3) that no cause of action at common law was established. Section 2 of the employer's liability act provides, among other things, that "no action for recovery of compensation for injury or death under this act shall be maintained unless notice of the time, place and cause of the injury is given to the employer within one hundred and twenty days and the action is commenced within one year after the occurrence of the accident causing the injury or death," and that the notice shall be in writing. The only notice given to the defendant was a letter addressed to it under date of September 30, 1903, signed by the plaintiff by his attorneys, as follows:

"Gentlemen: Take notice that on the 22d day of July, 1903, Joseph Ortolano, while in your employ, sustained severe injuries to his person, including a severe cut on the left hand, while working at or near the corner of 42nd street and Madison avenue, New York City, borough of Manhattan, which he claims resulted from your negligence in not providing a proper and suitable place for him to work."

It will be observed that this notice does not in express terms show that the claim was made under the employer's liability act, nor is it stated that the injuries were caused through a negligent defect "in the condition of the ways, works or machinery connected with or used in the business of the employer," or through "the negligence of any person in the service of the employer intrusted with and exercising superintendence whose sole or principal duty is that of superintendent, or in the absence of such superintendent, of any person acting as superintendent with the authority or consent of such employer," which constitute the elements of a cause of action under the employer's liability act (section 1, Employer's Liability Act). This notice, at most, indicates a claim made under the common law, and, while it was not essential to the plaintiff's right to sue on a common-law liability that he should serve a notice of claim, yet it must be regarded as now well settled that a notice, to constitute the basis for an action under the employer's liability act, must fairly apprise the employer that the claim is made under the statute, and point out the negligence from which the injury arose. Chisholm v. Manhattan Railway Company, 116 App. Div. 320, 101 N. Y. Supp. 622; Miller v. Solvay Process Co., 109 App. Div. 135, 95 N. Y. Supp. 1020; Hughes v. Russell, 104 App. Div. 144, 93 N. Y. Supp. 307. The notice in question gave the defendant no information with respect to the manner in which the plaintiff sustained injury. It does not even point out what came in contact with the plaintiff's hand, or show whether something was thrown against it or fell upon it, or whether the injury was self-inflicted by the plaintiff in an effort to protect himself from danger incident to being employed in an unsafe place. No evidence was given tending to show that there was no intention to mislead the defendant by the notice, or that the defendant was not misled thereby, to save the notice under the second section of the statute. The learned trial court read the material provisions of the employer's liability act to the jury and left it to the jury to decide whether or not the defendant was liable thereunder, and presumably the verdict is based upon the theory that the statute was violated.

The defendant was engaged in building a section of the underground railway known as the "subway," in Forty-Second street, near Madison avenue. A tunnel in which to operate the trains had been constructed some distance below the surface of the street. The fact does not clearly appear, but it is fairly to be inferred from the record, that the excavation for the subway tunnel in Forty-Second street was made in part by an open cut, and that the street railway tracks in the street, including the cement surface between and adjacent to the rails, were supported by caps, extending at right angles under the tracks, placed about 10 feet apart, resting upon posts, and by planking between the caps, running longitudinally with the tracks, apparently resting upon the caps, forming "a solid sheathing under the track." After completing the roof of the tunnel, it became necessary to jack up the car tracks to the level of the sidewalks, and, to do that, it was necessary to remove the sheathing. At the time of the accident the plaintiff and fellow workmen were engaged by direction of their foreman in putting hydraulic jacks in place to jack up the tracks at a point in Forty-Second street, between Madison and Fifth avenues, where the roof of the tunnel was, according to the testimony of the plaintiff, some six or seven feet below the ground, and according to the testimony of other witnesses a greater distance. The plaintiff had been employed doing similar work, and in assisting in putting in the supports for the street railway tracks for a period of eight or nine months, and the work of jacking up the tracks at the time of the accident was being conducted in the same manner as it had been done theretofore. The plaintiff testified:

"While we were putting those jacks in, one fell down and the ceiling on top of us. The ceiling fell down, knocking me down. I fell on the ground. This ceiling was composed of stones; everything concrete. This whole mass of concrete and stone fell on me, and threw me to the ground."

The injury to the plaintiff consisted of a cut in the palm of his left hand, which was struck by some falling material, and other lesser injuries evidently sustained by falling upon being thus struck. The foreman had charge of 15 men, divided up into three or four gangs. One of the working men engaged in the gang with plaintiff testified that, while they were lifting the track, "a car passed, and concrete and earth fell on top of us, stones and everything," and that one of the stones cut plaintiff's hand. Another employé working with the plaintiff testified that plaintiff had his hand extended at the time, and that it was struck by concrete. The hydraulic jacks were not described. It appears that they were placed under the track between the caps or cross-beams, but it does not appear whether the power was exerted against the ties or the cement or otherwise, nor was it shown how the tracks were held in place when jacked to the proper height. The engineer in charge of the work testified that the tracks could not be jacked up without removing the sheathing, and that the same method was adopted throughout the work, "except where a particular situation, an irregular situation, was encountered; then shoring had to be attempted to meet the new situation. In general, it was the same all the way through." It was not shown that either a "particular" or "ir-

regular" situation was encountered where plaintiff met with the injuries. It appears from the testimony of the plaintiff's working partner that the men themselves removed the sheathing before inserting the jacks, and that they were instructed by the foreman to get boards enough, timber and braces, to protect themselves, and that, if they did not, it would be their own fault, and that—

"in raising these hydraulic jacks to move the timber, this piece of dirt or ceiling came down—I don't know where it came from—it might have come through the hole, from the running of the Metropolitan plows, and must have hit him on the hand. It might have been the Metropolitan plows on the car that turned it down there. I cannot say where it came from. A car passed at that time and shook the structure. * * * Something fell. I know what caused it to fall. The shaking of those cars crossing over Forty-Second street going south on Madison avenue. The plow shook this stuff down; the Metropolitan cars; the plow of the car. Where the plow was, it was all the time open. The concrete or other portion of the ceiling was all protected from falling on the side of the trolley tracks, yet there was some substance fell on him. This stuff could come down, being in the trolley slot between the trolley tracks where the slot runs; that could drop that down and do a whole lot of damage. There is four or five inches of space for the plow to run in. I saw the material after it was on the ground after it struck Ortolano. I examined it. It was a piece of dirt. A small piece of dirt; a piece of concrete mixed with it, like a small stone. You might say a pound or a pound and a half, the piece that came down. I say a small piece of dirt hit him, about a pound and a half. * * * That is my belief that the only thing that hit this man was something that came down through the plow slot, that a trolley car going south on Madison avenue, crossing over Forty-Second street, dropped this piece through the slot. It weighed a pound and a half. The slot is four inches wide."

This is the only material evidence relating to the manner in which the accident occurred, or its cause. There is no evidence of any observation or inspection after the accident to determine where the material which fell came from, or as to the appearance of the undersurface above the men when they removed the sheathing to enable them to set the jacks in place. These facts do not bring the case within the employer's liability act, nor do they make out a prima facie case of liability for negligence at common law. There was no defect in the condition of any of the ways, works, or machinery furnished by the defendant or used in its business, and there is no evidence of negligence of any one in the service of the defendant intrusted with and exercising superintendence, whose sole or principal duty was that of superintendent, or of any one acting as superintendent. What caused the material to fall was not shown. If, as indicated by some of the testimony, the material came from the slot for the trolley plow, of course, the defendant would not be liable, unless, at least, by proper inspection it should have discovered the danger of which there is no evidence. The only theory upon which the defendant could be liable would be that the undersurface of the railway tracks was in a dangerous and unsafe condition, and that this was known to the defendant, or should have been discovered in the exercise of reasonable care, and there is no evidence to sustain either proposition. The inference clearly is that, if the place was unsafe, it was made so by the plaintiff and his fellow workmen. It appears that part of their work consisted in putting in the braces and sheathing, and, if in removing the sheath-

ing they discovered anything in the condition of the undersurface of the street, under which they were to work, that would render it dangerous, they apparently had the material at hand with which to protect themselves, and were directed to do so by the foreman who was not present at the time. It may be that in putting one of the jacks in place the plaintiff and his fellow workmen disturbed the surface above and precipitated the material upon themselves. In these circumstances, we think the court also erred in refusing to instruct the jury, as requested by counsel for the defendant, that, if the plaintiff's injuries were received through the negligence of a fellow servant, there could be no recovery. The jurors may have been of the opinion, as we are, that there was no negligence on the part of the defendant, but that one of plaintiff's fellow employés was guilty of negligence, and, upon that theory, have rendered the verdict.

The court also erred in instructing the jury as matter of law "that the plaintiff did not take upon himself the risks of an unsafe place in which to work," and that the only risks he assumed were those "incident to the work he had to do after the place in which he was to do that work was made safe or reasonably safe." The only risks which an employé now assumes as matter of law are those to which the learned court referred in these instructions to the jury (section 3, Employer's Liability Act), but the learned court overlooked the other provision of the employer's liability act, which is somewhat obscure, but has been construed as meaning that whether or not the employé assumed other risks is a question of fact to be determined by the jury. Kiernan v. Eidlitz, 115 App. Div. 141, 101 N. Y. Supp. 731; Cadigan v. Glens Falls Co., 112 App. Div. 754, 98 N. Y. Supp. 954.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.