JULIA A. BISHOP QUILL, Appellant, *v.* THE MAYOR, ALDERMEN AND
COMMONALTY OF THE CITY OF NEW YORK, Respondent.

*Negligence — injury caused by a New York city garbage cart — the duty of removing
ashes and garbage is a private, not a governmental, one — the testimony of a wit-
ness may be credited in part and in part be discredited.*

The duty imposed upon the mayor, aldermen and commonalty of the city of
New York by section 704 of the Consolidation Act (Chap. 410 of the Laws of
1882, as amd. by chap. 269 of the Laws of 1892), of removing from said city
all ashes and garbage, is not the governmental function of abating nuisances,
but the private duty which would otherwise rest on the residents and property
owners of the municipality, and, consequently, the city is liable to one who
has sustained personal injuries because of the negligence of the driver of an
ash and garbage cart belonging to its street cleaning department.

In an action brought against the city by the person thus injured, the plaintiff is
not concluded by the denial of the driver of the cart as to the occurrence of the
accident, and may ask the jury to believe other testimony of the driver that
he was in the employ of the defendant at the time, and to disbelieve his state-
ment that the accident did not occur.

APPEAL by the plaintiff, Julia A. Bishop Quill, from an order
of the Supreme Court, made at the New York Trial Term and

entered in the office of the clerk of the county of New York on the 28th day of October, 1897, granting the defendant's motion for a new trial made upon the minutes, the jury having previously rendered a verdict in favor of the plaintiff for $500.

This appeal was transferred from the first department to the second department.

*J. Campbell Thompson* [*William P. Maloney* with him on the brief], for the appellant.

*Theodore Connoly* [*Terence Farley* with him on the brief], for the respondent.

CULLEN, J. :

This action was brought to recover for injuries claimed to have been inflicted upon the plaintiff by an ash and garbage cart belonging to the street cleaning department of the defendant, which was being driven along Manhattan street. The jury rendered a verdict for the plaintiff for the sum of $500. The plaintiff was seeking to board a street car at the time that she was struck by the cart. The conductor testified that the cart was marked with the marks of the department, and he identified the person who was driving the cart at the time. The driver of the cart testified that he was in the employ of the department on the day in question, though he denied that any accident, such as claimed by the plaintiff, had happened. The plaintiff was not concluded by the denial of the driver as to the occurrence of the accident. She might well ask the jury to believe his testimony that he was in the employ of the city at the time, and to disbelieve his statement that the cart had not struck her. The evidence was, therefore, sufficient to support the verdict of the jury, and the order appealed from can only be sustained on the ground that, in the service which the driver of the cart was performing at the time, the defendant was not liable for his acts.

It cannot be expected, nor would it be profitable, that we should review from the earliest time the development of the law on the liability of municipal corporations for the torts of their servants or officers. The law on this subject is not the same in all the States, and it doubtless rests in many cases upon distinctions that are wholly artificial and on legal fictions. Nevertheless, the principles

of such liability and the classes of cases in which the municipality will be held liable and those in which it will be held exempt from liability in this State are well settled by authority; and we may safely start in the present discussion with the case of *Maxmilian* v. *The Mayor* (62 N. Y. 160). There the court said: "There are two kinds of duties which are imposed upon a municipal corporation: One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes; the latter is public and is used for public purposes."

In the first case, the municipality is liable for the torts of its officers and servants; in the second not. Accordingly it has been held that a municipal corporation is not liable for the acts of its police officers, its commissioners of charities, its board of education, its health authorities, and generally for officers engaged in such duties or such governmental functions as the State assumes to discharge throughout its whole territory. But the duties which the law considers as imposed on municipal corporations in their corporate character and not as governmental in the broad sense, are not confined to those which relate to the private property of a municipality nor to undertakings from which it may receive pecuniary profit. In the old city of New York the title to the streets is in the city, though the city merely holds them as trustee for the general public. (*The People* v. *Kerr*, 27 N. Y. 188.) But in the great majority of cases the municipal corporation has no property right whatever in the streets, the fee being in private individuals and the easement of passage being in the people of the State. Still, it is well settled that for failure of its duty to keep the streets and highways within its territory safe, a municipality is liable. (*Weet* v. *Trustees of the Village of Brockport*, 16 N. Y. 161.) The same is true of the sewers. (*Lloyd* v. *The Mayor, etc., of New York*, 5 N. Y. 369.) From the maintenance of neither streets nor sewers does the city derive profit; on the contrary, they constitute a burden and expense. We are entirely willing to adopt the classification of municipal duties formulated by the learned counsel for the respond-

ent: "*First.*— Governmental duties, which have been delegated to the city or town by the People acting through the Legislature, and which, though performed within circumscribed territorial limits, serve to benefit the People of the State, and in the carrying out of which the municipal corporation is only an agent of the State. *Secondly.* — *Quasi-private* duties, to be exercised for the peculiar advantage of the municipal locality and its inhabitants, and exclusive of any benefit to be conferred upon any person outside of the corporate jurisdiction."

The question then is presented, into which class does the duty imposed by law upon the city of New York to remove the dirt accumulating on the streets, and ashes and garbage from the abutting residences, fall. That duty is imposed by section 704 of chapter 410 of the Laws of 1882, commonly called the Consolidation Act, as amended by chapter 269 of the Laws of 1892, "and is to remove from said city, or otherwise dispose of, as often as the publc health and use of the streets may require, all street sweepings, ashes and garbage, and to remove the newly-fallen snow from leading thoroughfares and such other streets and avenues as may be found practicable." The learned counsel for the respondent contends that this is a police regulation imposed in the interest of public health; that it is governmental as distinguished from municipal or corporate. The learned trial court upheld this claim so far as the obligation of the city to remove snow, ashes and garbage is involved; and held that, as the case failed to show in what particular work the driver and vehicle were employed, whether that of cleaning the streets or of removing ashes, the defendants were not liable. This ruling is in accordance with the decisions in *Bishop* v. *Mayor* (21 Misc. Rep. 598) and *Davidson* v. *Mayor* (24 id. 560). It has also the support of two cases in other States. In *Love* v. *Atlanta* (95 Ga. 129) it was held that the removal of garbage from the street was the exercise of a purely governmental function, affecting the welfare of the citizens of the State generally, and that a municipal corporation was not liable for the acts of employees engaged in the discharge of such work. In *Connelly* v. *Mayor* (46 S. W. Rep. 565) substantially the same doctrine of non-liability was held by the courts of Tennessee in the case of a watering cart engaged in sprinkling the streets.

With the greatest deference to the learned courts by which these decisions have been promulgated, we think they proceed on a fundamental misconception of the duty discharged by the municipality. That the city is not liable for the action of its health authorities in the protection of public health, we concede to its fullest extent. But the work undertaken by the city in the cases cited is not at all part of the governmental work or duty of the State in protecting the health of its citizens. Boards of health, probably in all States, certainly in this, have the power to abate nuisances, and, also, to prevent the creation or occurrence of nuisances. But this work is not done, in the first instance, by the government or at its expense. The duty of maintaining his premises free from nuisance rests primarily on the owner or occupant, and he must discharge it at his own cost. When he fails to do so, he is liable to indictment and punishment, and the nuisance can be abated. So far as we know, the expense of the abatement of a nuisance is imposed on the offender. The abatement of a nuisance is doubtless strictly a governmental work, and for the wrongs committed by public officers in such work the municipality would not be liable. But the work required of the citizen to prevent his property becoming a nuisance is in no sense governmental. Now, the duty or labor imposed on the city by the Consolidation Act, as to the removal of garbage and ashes, seems to us plainly not the governmental function of abating nuisances, but the private duty which would otherwise rest on residents and property owners within the municipality. The State, especially of late years, with advancing civilization and with increase in the knowledge of hygiene, has in many respects raised the sanitary conditions and requirements in accordance with which it requires its citizens to live; but it has not assumed to furnish from the public funds the cost entailed by those sanitary rules with which it compels the citizen, by threatened penalties, to comply. The duty rests as much on the owner of a farm in Essex county to keep his premises free from any accumulation of garbage or refuse that would constitute a nuisance, or endanger public health, as it does upon the owner of a hotel fronting on Broadway. The State does not assume to transport the garbage or ashes from the farm, nor to see to their deposit in a place where they would be innocuous. In fact, it is only within a few years that the municipalities have assumed this duty.

I well remember when, in Brooklyn, all garbage, if not ashes, were taken away from the houses by contract between the property owner and private individuals engaged in the business. In a large part of the territory of Greater New York the same rule still prevails. It is within the last forty years that any general system of sewers has been constructed and maintained in either the city of New York or Brooklyn, although prior to that time there were large sewers on particular streets. Before the construction of the sewers, privy vaults and cesspools were maintained on private property, and the duty rested on the owner to keep those vaults in such a condition as not to become a nuisance or dangerous to health. The difficulty private parties find, where there is a large and dense population, in properly disposing of their sewage, led to the establishment of public sewers. But in reality it was a private duty assumed by the municipality on account of the difficulty of the citizens, individually, properly discharging it. The same is equally true of the duty now assumed to remove ashes and garbage. As to ashes, they are in no sense a menace to health; they are used for filling in lots and low lands all through the city. The burden of removing the ashes, if the owner does not wish them to remain longer on his property, is primarily just as much his personal obligation as it was to bring to his premises, in the first instance, the coal from the burning of which the ashes proceeded. As to the garbage, we do not see that it can be distinguished in principle from the case of the sewage. Both are occasioned by the acts of private persons, and on account of the restrictions imposed by urban life, the city discharges the private duty of the members of the municipality which it has become difficult for those members to discharge themselves. The same is true of the furnishing of water to the residents. It was primarily a private enterprise. Originally the burden of obtaining water for potable or other purposes rested on the persons desiring to use it, to the same extent as in the case of flour to make bread. In many places and in many cities to-day it is furnished by private capital. But here again the necessities of urban life and the impossibility of getting water unless by a general supply from distant sources has rendered it necessary for municipalities to enter upon the work of furnishing water to their residents.

It seems to us that all these duties are strictly municipal. It is entirely probable that many other services that are performed by the citizen, each for his own benefit, will, on account of the great convenience and advantage, in the future be assumed by the municipal government. Indeed, the distinguishing feature that characterizes such services as municipal is that they are primarily the work of the individual citizens, not assumed by the government throughout the State at large, but rendered necessary to be performed by municipalities on account of the condition of life peculiar to such municipalities.

The order appealed from should be reversed and judgment ordered on the verdict, with costs to the appellant.

Order granting new trial reversed, and judgment unanimously directed for plaintiff on verdict, with costs.