CELIA REILLY, as Administratrix of the Estate of DAVID REILLY,
    Deceased, Appellant, *v.* TROY BRICK COMPANY, Respondent.

NEGLIGENCE — SAFETY OF WORKING PLACE — ASSUMPTION OF RISK —
CONTRIBUTORY NEGLIGENCE — ISSUE OF FACT. The facts examined in
an action brought under the Employers' Liability Act (L. 1892, ch. 600) to
recover damages for the alleged negligent killing of plaintiff's intestate, a
common laborer, who had been in the employ of the defendant for several
years, and was killed by the fall of a portion of a clay bank at the foot of
which he was working, and *held*, that a direction of the trial court setting
aside a verdict in favor of the plaintiff and directing a dismissal of the
complaint was erroneous, where there was some evidence, raising the
question as to whether or not the defendant had neglected to properly
protect the place where the deceased was working; and also raising the
question of the intestate's assumption of a particular risk or of his con-
tributory negligence, all of which questions were, under the circum-
stances, for the jury.

*Reilly* v. *Troy Brick Co.*, 108 App. Div. 108, reversed.

(Argued March 27, 1906; decided April 6, 1906.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the third judicial department, entered
November 27, 1905, affirming a judgment in favor of defendant
entered upon a dismissal of the complaint by the court at a Trial
Term after a verdict had been rendered in favor of plaintiff.

The action was brought to recover damages for the alleged
negligent killing of the plaintiff's intestate, a laborer in the
employ of the defendant. The defendant is engaged in the
manufacture of brick within, or very near, the northerly
boundary of the city of Troy. The accident which caused
intestate's death happened at about 2 or 3 o'clock in the after-
noon of June 4, 1904. At that time he was engaged, in com-
pany with several other laborers, in digging clay at the foot
of a clay bank in the defendant's brick yard. A portion of
the bank gave way, burying and killing the intestate and two
other laborers.

The action is brought under the provisions of the Employ-
ers' Liability Act (L. 1902, ch. 600). The jury rendered a
verdict in favor of the plaintiff for $3,000. The trial court

subsequently set aside the verdict and rendered judgment dismissing the complaint. The Appellate Division affirmed the judgment thus entered and allowed an appeal to this court.

*George B. Wellington* for appellant. The plaintiff in view of the nonsuit (and of the general verdict in her favor) is entitled to the most favorable facts and inferences to be found and drawn from the testimony. There is evidence to sustain a verdict for the plaintiff. (*Higgins* v. *Eagleton,* 155 N. Y. 466; *Ernst* v. *H. R. R. R. Co.,* 35 N. Y. 9; *Wolfkiel* v. *S. A. R. R. Co.,* 38 N. Y. 49; *Payne* v. *T. & B. R. R. Co.,* 83 N. Y. 572; *Smith* v. *N. Y. C. & H. R. R. R. Co.,* 177 N. Y. 224; *Read* v. *Spaulding,* 5 Bosw. 395; 30 N. Y. 630; *Greely* v. *State of New York,* 94 App. Div. 605; *Michaels* v. *N. Y. C. R. R. Co.,* 30 N. Y. 564.) The plaintiff could not be nonsuited upon the ground of contributory negligence of the deceased or assumption of risk by the deceased. (*Vaughn* v. *G. F. Cement Co.,* 105 App. Div. 136; *Buckley* v. *P. H. I. Co.,* 17 N. Y. S. R. 436; 117 N. Y. 645; *True* v. *L. V. R. R. Co.,* 22 App. Div. 588; *Jenks* v. *Thompson,* 179 N. Y. 20.)

*Lewis E. Griffith* for respondent. Before there can be any question in this case as to a safe place in which to work, or as to proper inspection, it must appear that there was a defect in the condition of the ways, works or machinery, which defect was due to the negligence of the employer or his superintendent, or that the injury was due to the negligence of the superintendent or of a person acting as such. (*Gmaehle* v. *Rosenburgh,* 178 N. Y. 147; *Lynch* v. *Allen,* 160 Mass. 252.) Having sued under the Employers' Liability Act, and having stated no other cause of action, the plaintiff must show that her case falls within the act or she must fail. (*Coffey* v. *R. R. Co.,* 155 Mass. 22; *Vegineu* v. *Morse,* 160 Mass. 143; *Rosin* v. *Manufacturing Co.,* 89 App. Div. 250.)

WERNER, J. The only question which we deem it necessary to consider upon this appeal is whether there was any evi-

dence of negligence on the part of the defendant, which, according to any reasonable view, justified the verdict of the jury. If there was, the learned trial court erred in setting the verdict aside, and the judgment dismissing the complaint must be reversed. In considering the question thus presented all contested facts must be assumed to have been found in favor of the plaintiff, and she is entitled to the most favorable inferences deducible from the evidence. (*Higgins* v. *Eagleton*, 155 N. Y. 466 ; *Place* v. *N. Y. C. & H. R. R. R. Co.*, 167 id. 345, 347; *Sundheimer* v. *City of N. Y.*, 176 id. 495 ; *Koehler* v. *N. Y. Steam Co.*, 183 N. Y. 1.)

David Reilly, the intestate, had been in the employ of the defendant since its incorporation, several years before the accident, and had also worked for the former owners of the property, covering a period of seven or eight years prior to that time. He was a common laborer working under the orders of either a bank boss or superintendent. The evidence discloses that in November, 1903, about seven months previous to the accident, a slide of clay from the defendant's bank had occurred at the same point where the intestate lost his life. The clay which was precipitated by the former slide lay along the floor of the yard extending outwardly from the foot of the bank. From that time to the day of the accident, the clay needed by the defendant for the making of brick was taken from the deposit thus formed. The process of removing this fallen clay had been going on from November, 1903, until the day of the accident, when this source of supply had become very nearly exhausted, and the intestate with his fellow-laborers were working within 15 or 20 feet from the foot of the bank.

The bank itself was from 65 to 70 feet high, with a slope which, the jury might have found, was only 20 feet from an imaginary vertical line starting at the foot of the bank and extending to the top. The portion of the bank that slid or caved was about 100 feet in width. A stratum of sand formed the floor, as it was called, upon which the bank rested, and in removing the old clay of the former slide the workmen left

about four feet on the sand; but in some places they dug down so that the sand underneath was visible. A former superintendent of the defendant, testifying in behalf of the plaintiff, described how the slide of 1903 occurred, and said: "I could tell from where the clay laid how it came, how the slide occurred. It slid right out from the bottom the same as this one did, pushed out."

The plaintiff's evidence tended to show that it is a common custom in such places to employ bank bosses, as they are called, to direct the movements of the men at work on the clay banks, and to look out for their safety. It also tends to show that the defendant employed such a bank boss until shortly after the slide of 1903 had occurred. After that time Morrissey, the president of the defendant, seems to have acted as superintendent and directed the work of the laborers at the bank. He was there frequently during the day, and the evidence shows that about ten minutes before the accident he looked over the bank and saw no indications of danger. The slide seems to have occurred without warning.

It must be conceded that the evidence tending to show that defendant was guilty of negligence is very meagre, but we do not think it can be held as matter of law that there was no evidence to that effect. In its final analysis the question is whether there was any evidence which, considered in the light of the practically undisputed facts as to the existing physical conditions and the circumstances attending the death of plaintiff's intestate, would warrant a jury in finding that the defendant had omitted to perform some affirmative duty which it owed to its employees engaged in working upon that bank. We think there was such evidence. This was a high, steep bank of heavy clay resting upon a sub-stratum of sand. The accident of November, 1903, when a large portion of the bank "buckled" or bulged out from the bottom and caused a slide of large and dangerous dimensions, was a demonstration of peril which none of the ordinary safeguards of inspection, based upon surface indications, would suffice to anticipate or prevent. The great deposit of clay formed by

that slide, so long as it remained undisturbed, furnished an ample lateral support for the remaining part of the bank, but when removed the former condition of danger was necessarily reinstated. That was precisely the situation on the day when Reilly was killed. The lateral support spoken of had been nearly all removed. The workmen had dug away the clay on the floor to a point about fifteen or twenty feet from the base of the bank. All this was done with the knowledge and acquiescence of the defendant's superintendent, and while the jury might well have found upon the evidence adduced that the ordinary inspection of the bank had not been neglected they might still have concluded that the larger and, as we think, the more obvious duty of protecting the base of this bank had been overlooked. It is true that the plaintiff's intestate was there daily and that his experience, even as an ordinary laborer, might have enabled him to anticipate the danger quite as thoroughly as his superior ought to have done, but whether he assumed that particular risk or was guilty of contributory negligence under the circumstances detailed were questions of fact for the arbitrament of a jury. It cannot be said as a matter of law that this common laborer, whose business it was to dig and to shovel, was chargeable with the same knowledge of existing physical conditions or possibilities as those whose primary duty it was to know all that a reasonably careful and prudent employer should have known or anticipated from what had gone before.

Other questions are presented on the briefs of counsel which may not arise on another trial, and since the question briefly treated by us is sufficient to compel a reversal we will not prolong the discussion.

The judgment of the Appellate Division should be reversed and a new trial granted, with costs to the appellant to abide the event.

CULLEN, Ch. J., EDWARD T. BARTLETT and HISCOCK, JJ., concur; GRAY, J., not voting; O'BRIEN, J., absent; CHASE, J., not sitting.

Judgment reversed, etc.