(70 Misc. Rep. 638.)

### JOSUPEET v. CITY OF NIAGARA FALLS.

(Supreme Court, Trial Term, Niagara County.  December 30, 1910.)

1. MUNICIPAL CORPORATIONS (§ 755*)—CARE OF STREETS.

While the construction and maintenance of public highways is primarily a state function, yet, where the ordinary care of streets, both as to repairs and cleanliness, is committed to a city by legislative enactment, it becomes liable for the proper discharge of these functions, because of the express or implied acceptance of the power and the agreement to perform the functions so committed to it, for its own benefit, and by its own agents.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1587; Dec. Dig. § 755.*]

2. MUNICIPAL CORPORATIONS (§ 747*)—POWERS—STREETS.

While the Legislature may limit the liability imposed on a municipality in the care of streets, in the absence of such restrictions, the duty imposed in the charters of keeping streets in proper condition makes the municipality responsible for the acts of its agents or officials.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1570–1577; Dec. Dig. § 747.*]

3. MUNICIPAL CORPORATIONS (§ 747*)—TORTS—STATUTES—LIABILITY FOR CARE OF STREETS.

Niagara Falls City Charter (Laws 1904, c. 300) provides by section 16 for a superintendent of streets, and for four members of the board of public works.  Section 211 gives the board of public works control of the construction, alteration, repair, care, etc., of streets, subject to the state law and city ordinances.  Sections 230, 231, give the superintendent of streets, subject to the board of public works, the powers and duties of commissioner of highways in towns, and power to hire all laborers, and teams, to provide implements and utensils, and to direct the execution of the work.  Section 31 authorizes removal of any appointive officer, by whoever would have power to fill a vacancy in the office, for incompetency, neglect of duty, misconduct, or inability to perform official duty, but only on written charges, and after public hearing.  Section 523 provides that nothing therein shall modify the law of contributory negligence, or require more from the city than to keep its streets and public places reasonably safe for public use and travel.  *Held,* that no limitation was thereby placed on the city's liability for keeping the city streets in proper condition.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1570–1577; Dec. Dig. § 747.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MUNICIPAL CORPORATIONS (§ 801\*)—MASTER AND SERVANT (§ 190\*)—TORTS·
   —LIABILITY FOR NEGLIGENCE—FELLOW SERVANTS.

    The liability of a city for negligence of its agents in keeping the streets
in condition is not limited to the traveling public, but extends to the
safety of its employés, and the provisions of the employer's liability act
(Consol. Laws, c. 31, §§ 200–204) apply to cities as well as to individuals
or private corporations, and hence a city is liable for the negligence of
a foreman of a street gang in directing an employé to work under an
overhanging bank, which had been cracked by dynamite, of which he was
ignorant, so that he was injured by the fall of the bank, the act of the
foreman being that of a vice principal.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
1600; Dec. Dig. § 801;\* Master and Servant, Cent. Dig. §§. 456–465;
Dec. Dig. § 190.\*]

Action by John Josupeet against the City of Niagara Falls.· Ver-
dict for plaintiff, and defendant moves for a new trial.  Motion
denied.

    Edward E. Franchot and Franklin J..McKenna, for the motion.
    Alfred W. Gray, opposed.

WHEELER, J.  The plaintiff recovered a verdict against the city
of Niagara Falls for serious personal injuries received under the fol-
lowing circumstances:  In January, 1908, the city was engaged in
removing a pile of stone and earth from East Falls street in that city.
Something more than a year prior to the accident the city had con-
structed a large trunk sewer in this street, and a large quantity of
broken stone and earth had been taken from the trench dug for that
purpose.  The pile was probably in the neighborhood of 100 feet in
length, and from 12 to 15 feet in height, with sloping sides.  Some
months before the accident the common council of the city had made
an appropriation of $2,000 to defray the cost of removing this pile of
stone from the street.  Shortly prior to the commencement of the
work, the board of public works instructed the superintendent of
streets to proceed with the work as soon as possible.  The street su-
perintendent hired about 70 men to work on the job.  Most of these
were men temporarily out of work, and in need of assistance to tide
them over a depression in business in the city at that time.  The
plaintiff applied to the superintendent of streets for work, and was
directed to report to one Coykendall, the foreman in charge of the
men at work on the pile.  Within a couple of hours after he had re-
ported for duty, the plaintiff was injured.  The evidence showed that
the stone pile had been frozen, and that a solid crust of a thickness
of from 2 to 2½ feet had formed over the pile.  Teams with wagons
were employed to haul the stone away, and it was taken and used for
filling in other streets of the city in the neighborhood.  The workmen
began shoveling the stones away at the foot of the pile, and gradually
worked towards its center.  In so doing they took out the unfrozen
mass below, but the frozen crust above would overhang.  It had been
the custom each noon and each night, after the workmen had left the
pile, to blast off this frozen overhanging crust by the use of dynamite.
The workmen would, the next day shovel again, and the blasting

would be repeated. Dynamite had been used in this way the night before, but the evidence showed that its discharge had failed to break off quite a considerable piece of the frozen overhang in about the middle of the pile, and that this projected about two or three feet. A witness who was on the top of the pile the morning of the accident testified he observed that the discharge of the dynamite the night before had started the mass sufficiently to open cracks in it, but not sufficiently to entirely break it off and cause it to fall. This dangerous condition of the overhang at this point, so far at least as the cracks were concerned, could only be seen by going on top of the pile, and was not obvious to a person working at the base of the slope. During most of the morning this dangerous point in the pile had been avoided, and the men had been put at work at other points along the pile, but about half past 11 the evidence shows that the foreman ordered the plaintiff and some men in the gang with him to begin shoveling into a wagon immediately under this dangerous overhang. The plaintiff apprehended no danger, and while so engaged, and within a very short time after he had begun working at this point, the overhang broke off, rolled down the bank, struck the plaintiff and caused the injuries for which the recovery was had. It appears no warning was given the plaintiff of danger, and we cannot discover that he was chargeable with any contributory negligence. The question was left with the jury to say, under instructions from the court, whether as matter of fact the city was guilty of negligence, and whether the plaintiff was free from contributory negligence. We think the evidence in the case clearly made out a good cause of action against the defendant. Simone v. Kirk, 173 N. Y. 7, 65 N. E. 739; Reilly v. Troy Brick Co., 184 N. Y. 399, 77 N. E. 385.

The counsel for the defendant, in an able argument reviewing many decisions, however, contends that the city of Niagara Falls is not liable to the plaintiff for the negligence, if any, of its street superintendent, or foreman in charge of the men engaged in the work of removing the stone pile in question. It is argued that such officials are not, in law, to be deemed agents of the city, but as representatives of the state acting in a governmental capacity, and exercising certain functions devolving on the sovereign, as distinguished from the municipality. The contention of the defendant is entitled to consideration. The construction and maintenance of public highways is primarily one of the great functions of the state; nevertheless it is now perfectly well established by numerous decisions of the highest courts of this state that where, by legislative enactment, the ordinary and usual care of streets, both as to repair and cleanliness, is committed to a municipality, and the power and responsibility has been accepted, the city becomes liable for a proper discharge of these governmental functions. The liability is based upon an express or implied acceptance of the power, and an agreement to perform the functions so committed to it, and it is held to be duties with which the city is charged for its own corporate benefit to be performed by its own agents as its own corporate act. Conrad v. Trustees of Ithaca, 16 N. Y. 158; Weet v. Village of Brockport, 16 N. Y. 161, note; Missano

v. Mayor, 160 N. Y. 123, 54 N. E. 744; MacMullen v. City of Middle-
town, 187 N. Y. 45, 79 N. E. 863, 11 L. R. A. (N. S.) 391; Ryan v.
City, 177 N. Y. 271, 288, 69 N. E. 599; Ehrgott v. Mayor, 96 N. Y.
265, 48 Am. Rep. 622; Maxmilian v. Mayor, 62 N. Y. 160, 20 Am.
Rep. 468; Quill v. Mayor, 36 App. Div. 476, 55 N. Y. Supp. 889.
Undoubtedly it is within the province of the Legislature to limit or
restrict the liability so imposed on the municipality, but "in the ab-
sence of any restrictions" the duty imposed in charters of keeping
streets in proper condition makes the municipality responsible for the
acts of its officials or corporate agents. MacMullen v. City of Middle-
town, 187 N. Y. 45, 79 N. E. 863, 11 L. R. A. (N. S.) 391.

We are unable to discover any such restrictions in the charter of
the City of Niagara Falls. By the city charter (Laws 1904, c. 300,
§ 16), the Legislature provided that:

"There shall be appointed by the mayor under this act, at the times and
for the terms of office herein stated, the following officers, who shall receive
for their services as such, the compensation and salaries herein stated, and
no other, namely: * * *

"4. A superintendent of streets for a term of one year; salary ten hundred
dollars per year. * * *

"10. Four members of the board of public works, two of whom are not ad-
herents of the same political party, to be appointed each year for a term of
two years; they shall receive no salary."

By section 211 of the same act, the Legislature provided:

"The board of public works, subject to the provisions of this act, the other
laws of the state and the ordinances of the common council, shall have cog-
nizance, direction and control of the construction, alteration, repair, care,
etc., of the streets, ways and sidewalks of said city, etc. * * * *"

The Legislature also provided by sections 230 and 231:

"The superintendent of streets, under the direction and control of the board
of public works, shall take immediate charge of all streets of the city, and,
except as otherwise provided by this act, the other laws of the state or by
ordinances of the common council, the superintendent of streets has over the
streets within the city all the jurisdiction, and is charged with all the duties
of commissioner of highways within the towns of the state.

"Under the direction of the board of public works the superintendent shall
hire all necessary laborers, teams, and provide the necessary implements and
utensils, and direct the execution of the work."

Section 31 is as follows:

"Any appointive city officer of said city may be removed from office by the
officer who would have power to fill a vacancy if a vacancy were then exist-
ing in said office, upon any one or more of the following grounds, namely,
incompetency, neglect of duty, misconduct or inability to perform the duties
of his office. But such removal shall be founded upon specific charges in
writing, whereof a copy shall be furnished to such officer, and before such
removal he shall have an opportunity to appear in person or by counsel, and
be heard in his defense at a public hearing."

By the latter part of section 523 of the charter it is declared:

"Nothing contained in this section shall be held to modify any existing law
relating to the question of contributory negligence, nor to impose upon the
city any greater duty or obligation than it shall keep its streets and public
places in a reasonably safe condition for public use and travel."

It is urged, however, that the liability imposed by charters of the character in question, as declared by the decisions of the courts, is a liability in favor of the traveling public, and not a liability to an employé engaged in the work of repairing streets or keeping them in proper condition; and it is argued by defendant's counsel that the liability of the municipality should not be extended so as to embrace cases of the character of the plaintiff's in this action. We are unable to discover a good or sufficient reason for making any distinction between the two classes of cases. The courts have not confined the right of recovery to travelers injured by defective highways, or limited the right of recovery simply to the failure to keep highways in proper condition.

In the case of Missano v. Mayor, 160 N. Y. 123, 54 N. E. 744, a child was run over and killed by a horse attached to an ash cart of the street department of the city of New York, owing to the negligence of the driver, and a recovery was sustained. The court broadly asserted that where a municipality, "for a consideration received from the sovereign power, has become bound by covenant or agreement, express or implied, to do certain things, such individual or corporation is liable in case of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by neglect."

In the case of Quill v. Mayor, 36 App. Div. 476, 55 N. Y. Supp. 889, the plaintiff claimed to have been injured by an ash or garbage cart belonging to the street cleaning department of the city, and it was argued the municipality was not liable for the tort. Judge Cullen, now Chief Judge of the Court of Appeals, wrote the opinion of the court, and, after discussing the cases, held that the duties being performed by the department were strictly municipal, and a recovery against the city was sustained.

It is true that in neither of these two cases was the plaintiff an employé, but the right of recovery was based upon the theory that the proper maintenance and care of the public streets of a city, being a municipal and not a governmental function, the officials and employés employed in the performance of those functions are to be deemed the agents of the city, and the city liable for their acts. It would be, to our mind, idle to contend that as to one class of persons such officials and employés are to be deemed agents of the municipality, and as to another class agents of the state.

If it be the individual duty of the municipality to keep the streets in repair and in condition for travel, it must employ men for that purpose, and it must exercise toward them the same care for their safety of life and limb as individual employers are bound to exercise toward their employés. We can see no reason why a municipality should not be held to the same care for the safety of its employés as an individual, nor why all the provisions of the employer's liability act (Consol. Laws, c. 31, §§ 200–204) should not apply to cities equally as to private corporations or individuals—employers of labor. The act makes no exceptions in favor of municipalities, and considerations

of public policy require none should be made by judicial construction or decision.

The cases cited and relied on by defendant's counsel to support his contention are not, in our opinion, analogous to the case in hand, and the considerations of public policy which controlled in those cases we think have no application to a municipality charged with the proper discharge of a duty in the care of streets, which it has assumed and undertaken to perform.

In this case, therefore, we are constrained to hold that the negligence of the foreman in charge of the workmen at the pile being hauled away, is not in law the negligence of a coemployé, but chargeable to the city of Niagara Falls as principal.

The motion for a new trial is denied.