GERTRUDE BATY, Plaintiff, *v.* THE CITY OF BINGHAMTON, Defendant.*

Supreme Court, Broome County, August 3, 1931.

* Revd., 234 App. Div. ——.

*Hinman, Howard & Kattell* [*C. Addison Keeler* of counsel], for the plaintiff.

*Edwin H. Moody, Corporation Counsel* [*Herbert H. Ray, Assistant Corporation Counsel,* of counsel], for the defendant.

McNAUGHT, J. Specific questions for a special verdict were submitted to the jury. The jury have found the defendant was negligent and the plaintiff was not guilty of contributory negligence. The evidence is ample to sustain the verdict. The plaintiff entered the public office to which she as one of the citizens of Binghamton was invited, for the transaction of her business with the city. She entered the office during business hours, and the evidence was sufficient to justify the jury in finding that the act of the servant Jacobi, in connection with what he did with reference to the linoleum-covered floor while plaintiff was in the city treasurer's office and prior to the hour the same was closed to the public, constituted negligence. The finding that plaintiff was not guilty of contributory negligence has evidence to support it and is not against the weight of the evidence. The damages are clearly not excessive, upon all of the evidence in reference to the injuries sustained by plaintiff.

The important and difficult question involved is, was the defendant city, in the maintenance and operation of its municipal building known as the City Hall and in the maintenance and operation in such building of the city treasurer's office, to which this plaintiff, as well as other citizens, was invited for the purpose of transacting business with the city, performing and exercising public and governmental functions only, or was the city acting in a corporate, private, or proprietary capacity?

It is a very ancient, but firmly established rule, that in the exercise of governmental powers and functions, a municipal corporation, like a sovereign power, is not liable for the negligent acts of its officers or servants, and the citizen or the individual, cannot recover damages for negligence when the functions exercised or duties performed were purely governmental. The theory is a survival of the medieval idea that the sovereign power can do no wrong. Reasons for its existence are based upon theories discarded and exploded in every other realm dealing with the relationship of citizens to government and government to citizens.

The duties imposed on municipal corporations and the functions such corporations exercise, embrace two general classes, one governmental and a branch of general administration of the government, the other quasi-private, or corporate. In the exercise of the

former, it is well established by authority that cannot now be questioned, that the municipal corporation is exempt from liability for the acts of its officers or agents, while in the latter, when exercising private or corporate functions, it is liable. (*Maxmilian* v. *Mayor*, 62 N. Y. 160; *Lefrois* v. *County of Monroe*, 162 id. 563, 567; *Wilcox* v. *City of Rochester*, 190 id. 137, 141, 142.)

The distinction between a governmental function or act, and a private or proprietary act, has been discussed and drawn in many decisions of the courts of this and sister States, as well as of the United States. The distinction is illustrated in *Oakes Mfg. Co.* v. *City of New York* (206 N. Y. 221), where (at p. 228), HISCOCK, J., speaking for the unanimous court, referring to the city undertaking to maintain a municipal water system and supply water to private consumers at a fixed compensation, and holding in so doing it was not acting in a governmental capacity, said: " It entered on an enterprise which involved the ordinary incidents of a business wherein was sold that which people desired to buy and which might become a source of profit, and under these circumstances it became liable for breach of contract or for negligence as the proprietor of a private business might become." (Citing cases.)

The doctrine of the non-liability of municipal corporations, even in the exercise of governmental functions, has been seriously questioned and condemned. Eminent jurists and distinguished legal authors have criticised the doctrine in unsparing terms. Reasons for immunity in one case and liability in the other, have been clearly shown not to be satisfactory. The United States Supreme Court has said: " We must not be understood as conceding the correctness of the doctrine by which a municipal corporation, as to the discharge of its administrative duties, is treated as having two distinct capacities, the one private or corporate, and the other governmental or sovereign, in which latter it may inflict a direct and positive wrong upon the person or property of a citizen without power in the courts to afford redress for such wrong." (*Workman* v. *City of New York*, 179 U. S. 552, 574.)

The modern tendency is against the rule of non-liability. (Borchard, Government Liability in Tort, 34 Yale Law Journal, 258; *Augustine* v. *Town of Brant*, 249 N. Y. 198, 205.)

"The line of demarkation, though it were plainer, has at best a dubious correspondence with any dividing line of justice  *  *  * In many jurisdictions, however, as for example in New York, it is supported by precedent so inveterate that the chance of abandonment is small." (Cardozo, Law and Literature, 57.)

The modern tendency is to be found not only in the expressions

of the courts and the discussions of leading jurists, but it is reflected in statutes. The State, by statutory enactment, has waived its immunity for liability for the torts of its officers and employees. (Ct. of Claims Act, § 12-a [Laws of 1929, chap. 467], in effect Sept. 1, 1929.)

Municipal liability for defective streets and highways has been extended. (Highway Law, §§ 74, 176 as amd.) Counties have been made liable for certain injuries caused by the negligence of their officers, agents or servants. (County Law, § 6, added by Laws of 1917, chap. 578.) Every city, town and village has been made liable for the negligence of an officer or employee in operating a municipally owned vehicle. (Highway Law, § 282-g, added by Laws of 1929, chap. 466, in effect April 10, 1929.)

The theory upon which the motion to dismiss the complaint is based seems to be that the defendant city, in maintaining in the City Hall an office for the city treasurer, whose function it is to collect taxes, as well as perform many other duties, was acting in a purely governmental capacity and, therefore, is exempt from liability for the negligent acts of its servants or agents in connection with the maintenance of such city treasurer's office. We are presented with the difficulty, always to be encountered in cases of this character, of distinguishing between a governmental function and those other activities of a municipality sometimes variously called private, proprietary, and ministerial.

Recognized general governmental functions in the exercise of which the municipality is exempt from liability for torts are such as pertain to police activities, the maintenance of peace and order, the preservation and protection of the public health, the maintenance of fire departments, and activities relating to public education. " But where the duties are cast upon a municipality, either by mandatory provisions of law or by those permissive only, which the municipality has adopted, and those duties are not in their nature governmental but could be carried on by individuals and relate to the convenience, the pleasure or welfare of the individual citizens, the municipality is then acting as a legal individual in a ministerial and administrative capacity. Correlative with the exercise of those duties is the obligation to perform them with reasonable care and vigilance. Failure to so perform, followed by injury, may result in liability for damages." (*Van Dyke* v. *City of Utica*, 203 App. Div. 26, 28.)

The establishment and maintenance of municipal parks is not a public duty and the municipality does not act as an agent of the State when it avails itself of the privilege of maintaining them. It acts as a legal individual voluntarily assuming a duty for the

benefit of a locality, rather than for the general public and when it assumes such a duty it also assumes the burdens incident thereto. (*Augustine* v. *Town of Brant, supra.*)

The collection of ashes, garbage and other refuse, and disposing of them, is a private, rather than a governmental function. (*Quill* v. *Mayor*, 36 App. Div. 476; *Thomann* v. *City of Rochester*, 230 id. 612, 616.)

The municipality operating a system for supplying water to ordinary customers on payment of rates, acts not in a governmental capacity, but as the proprietor of a corporate business. (*Oakes Mfg. Co.* v. *City of New York, supra; Canavan* v. *City of Mechanicville*, 229 N. Y. 473, 476.)

The maintenance of municipal playgrounds is not the performance of a governmental function and the municipality maintaining such playgrounds is liable for its own negligence. (*Augustine* v. *Town of Brant, supra; Van Dyke* v. *City of Utica, supra; Lane* v. *City of Buffalo*, 232 App. Div. 334.)

The municipal building of the defendant houses the municipal activities of the city of Binghamton. It contains offices and departments, some of which exercise purely governmental, and some of which exercise purely private and proprietary functions. The city treasurer's office collects the taxes and all other sums due the city for the maintenance and operation of its multitudinous municipal affairs. Governmental and private functions are inextricably mixed in the city treasurer's office. In this office are collected not only the taxes for the maintenance of the purely governmental functions of the municipality, such as the police, health and educational departments, but also 'water rates and the sums included in the taxes imposed, for the removal of ashes and garbage, for the maintenance of municipal parks and playgrounds and for those functions that are purely private, proprietary and ministerial.

The purpose of the plaintiff in going to the city treasurer's office, the place to which the defendant directed her to go for the purpose of paying her taxes, was to pay taxes imposed by the defendant city, not only for the support of its purely governmental powers and functions, but for all of its private business corporate affairs. The defendant city, using the same city treasurer's office for the collection of the funds necessary to support and operate its various private corporate enterprises, as well as maintain its governmental functions, employs a servant, one Jacobi, whose duty it is to keep the city treasurer's office and the floor in proper and suitable condition. This servant the defendant had the right to select, the power to discharge and the authority to direct and control in the discharge of his duties. (Second Class Cities Law, § 13.)

During the hours when the office was open to citizens for the transaction of business, the plaintiff arrived and entered. Prior to the hour specified for its closing, the servant entered the office and proceeded to wet the linoleum-covered floor, placed a powder upon it which created a soapy condition and left a slippery surface when mopped, failed to call the attention of the plaintiff to the condition, removed himself to a point where he could not be observed by the plaintiff, and without having her attention called to the condition, plaintiff slipped, fell and was injured. The jury have found upon ample evidence that the act of the defendant's servant was negligent; that the injuries were not occasioned by the contributory negligence of the plaintiff, and the verdict upon the facts is fully justified.

The issue presents, however, a question for decision upon which there seems to be a dearth of authority in the State of New York. Decisions are numerous where the line of demarkation between the governmental and the private function have been discussed and the act has been determined as belonging in one class or the other class. The resourcefulness of counsel and research of the court have proven unavailing in the effort to discover any authority in this State where the question of liability or non-liability has been determined in a case where the two functions were so combined and involved that they could not be separated.

The learned corporation counsel has cited numerous authorities holding municipalities free from liability for negligence. When examined, the cases refer solely to the exercise of governmental functions and resolve themselves under the head of courts, police fire, public health or education. An entirely different question is here presented. We are to determine whether responsibility is to be avoided by the defendant through a strict adherence to the doctrine of non-liability because governmental functions were exercised and funds for the support of the operation of such functions were collected in the city treasurer's office maintained only in part for such purpose. It was for the payment of taxes to support such governmental activities only *in part* that the plaintiff was in the city treasurer's office.

It is undisputed that the city treasurer's office collected funds for all of the private enterprises of the defendant city. It is undisputed that the taxes paid by plaintiff included funds for the support of the private enterprises of the defendant city. Is the rule of non-liability to be extended and amplified against all of the modern tendencies to criticize, distinguish and extinguish it, so that the municipality engaged in numerous private enterprises may escape liability for the negligence of its officers and employees, because

the office where those activities center and where the funds for their maintenance are collected, may also collect funds for the maintenance of purely governmental functions? The adoption of such a rule would be an unjustified extension and amplification of the doctrine which is now so bitterly assailed. It would be neither justice nor logic to retain and apply to this plaintiff the medieval rule because some fractional proportion of the functions exercised through the city treasurer in the office where the plaintiff was injured were strictly governmental.

A review of authorities in other jurisdictions would unduly extend this memorandum. It suffices to say the decisions are not uniform. (See note, 64 A. L. R. 1545–1550, to *Bell* v. *Pittsburgh*, 297 Penn. St. 185.)

The *Bell Case* (*supra*) presented the question here under consideration. A building was jointly owned and operated by the county of Allegheny and the city of Pittsburg. The building contained county offices, courts, law library, city offices, such as the mayor's, treasurer's, comptroller's, police bureau, departments of public health, public welfare and other city bureaus and departments. The elevators were operated one-half by the county and the other half by the city and were used indiscriminately. Plaintiff entered the building to go to the public welfare department to obtain a permit for the city hospital. She was directed by a dispatcher to enter an elevator operated by a county employee. The elevator started quickly, throwing plaintiff to the floor and seriously injuring her. Plaintiff recovered judgment against both the city and county. The county appealed. The court held the county was liable for the negligence of its employees, though the county business transacted in the building was wholly governmental.

The building was used partly for business and partly for governmental purposes and while the county was engaged in purely governmental functions, the city and many of its departments were engaged in purely business enterprises. The court said: " The fact that some of the activities centered in this building are exclusively of a purely governmental nature will not affect liability, when they are joined with business activities. To separate the various journeys to these different activities by movements of time or particular instances of use would be to destroy the unity of the rule that imposes liability for negligent acts against one of the parties * * *. Where these acts in furtherance of the activities of the separate agencies are at times mingled and at times alternated, there is no separation when testing their legal effect as related to responsibility for the negligent acts of servants. Reason and justice dictate that the governing business activities

predominate. The instrumentality must always be considered in the use in which the joint arrangement placed it, namely, joint business and government use. The courts cannot be expected to unscramble the mixed relations in which the parties find themselves through their agreement."

In the case at bar there is no joint arrangement with the county or any other municipal corporation, but the defendant is using its City Hall and is using its city treasurer's office for " joint business and government use." Is this court, in the language of the Supreme Court of Pennsylvania, to be expected " to unscramble the mixed relations? "

The reasoning and the rule in the *Bell Case* (*supra*) seem particularly applicable to the issue here presented.

We conclude the defendant under the facts and circumstances in this case is liable for the negligence of its servants and employees; that the verdict is not against the evidence or the weight of the evidence; that the damages are not excessive, and that plaintiff is entitled to recover.

The motion for a nonsuit and dismissal of the complaint is denied.

A general verdict is directed to be entered upon the special verdict of the jury in favor of the plaintiff, Gertrude Baty, and against the defendant, The City of Binghamton, for $600 damages.

Motion to set aside the verdict and for a new trial under section 549 of the Civil Practice Act, is denied.

Prepare and submit orders and judgment accordingly.