OAKES MANUFACTURING COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

Municipal corporations — trial — judgment — when judgment entered on findings, at request of both parties, after nonsuit is a judgment on the merits and not a judgment of nonsuit — when municipality furnishing water for manufacturing purposes not liable for damages caused by impurity of water.

1. When after the trial judge had indicated that he would grant a nonsuit, both parties submitted to him requests for findings of fact and conclusions of law upon which he made findings on the merits on which a judgment was entered dismissing the complaint and no application was made to amend the judgment, which was unanimously affirmed by the Appellate Division, such judgment is one not of nonsuit but on the merits. (*Keyes* v. *Smith*, 183 N. Y. 376, followed; *Place* v. *Hayward*, 117 N. Y. 487, distinguished.)

2. A municipality in operating a system for supplying water to ordinary customers on payment of rates acts not in a governmental capacity but as the proprietor of a corporate business wherein it is subject to many of those principles of liability which would apply to a private individual in the conduct of a similar business, and under these circumstances it becomes liable for breach of contract or for negligence. (*Springfield F. & M. Insurance Co.* v. *Village of Keeseville*, 148 N. Y. 46, distinguished.)

3. In discharging such a function as that of furnishing water to citizens, the municipal authorities are necessarily invested with a wide discretion which is not subject to judicial review. Under any ordinary circumstances which do not involve bad faith or a waste of public funds they must decide whether one source or another shall be sought, and after the supply has been obtained no court

can say that mains must be laid in every street or that every resident must have water best suited for his particular needs.

4. Where the water furnished by a municipality is suitable for domestic use, and is used for industrial and manufacturing purposes; is not injurious to public health and is reasonably satisfactory for all purposes except the peculiar and uncommon uses to which it is put in the conduct of the business of plaintiff, who used it with knowledge of its quality, and it does not appear that there is any better source of supply reasonably available, plaintiff has no right of action because of its lack of adaptability to its use.

*Oakes Mfg. Co.* v. *City of New York,* 141 App. Div. 130, affirmed.

(Argued May 20, 1912; decided October 1, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 1, 1910, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John D. Kernan* for appellant. The Long Island City and Greater New York charters impose upon defendant the duty to see that all proper measures are taken to preserve the purity of. the water for the use of the inhabitants for pay, and of keeping it free from pollution. (*F. Ins. Co.* v. *Vil. of Keeseville,* 148 N. Y. 53; *MacMullen* v. *City of Middletown,* 187 N. Y. 37; *Bailey* v. *Mayor, etc.,* 3 Hill, 531; *Market* v. *County of Queens,* 154 N. Y. 684.) The function of supplying water for use by the inhabitants of a city for pay is in the nature of private business and is to be distinguished from the governmental function of supplying water for fire extinguishment, sewer flushing and all public uses. In the former case it is liable for its negligence; in the latter it is not. (*Miller* v. *Minneapolis,* 75 Minn. 131; *Tainter* v. *Worcester,* 123 Mass. 317; *Bailey* v. *Mayor, etc.,* 3 Hill, 531; *Mayor, etc.,* v. *Britton,* 12 Abb. Pr. 367; *Benson* v. *Mayor, etc.,* 10

Barb. 234; *People* v. *Batchellor,* 53 N. Y. 141; *Darling-ton* v. *Mayor,* 31 N. Y. 164; *Town of Southeast* v. *City of New York,* 96 App. Div. 598; *Messersmith* v. *City of Buffalo,* 138 App. Div. 432; *Danaher* v. *City of Brooklyn,* 119 N. Y. 241.)

*Archibald R. Watson, Corporation Counsel* (*Terence Farley* and *Edward S. Malone* of counsel), for respondent.   In view of the facts as found by the Special Term, which have been unanimously affirmed by the Appellate Division, the plaintiff is not entitled to the equitable relief which it demands. (*Deeley* v. *Heintz,* 169 N. Y. 129.)   A corporation which is expressly organized for the purpose of distributing water for compensation is not a guarantor of its quality. (3 Dillon on Mun. Corp. [5th ed.] § 1316; *Asher* v. *Hutchinson W., L. & P. Co.,* 61 L. R. A. 87; 1 Farnam on Water & Water Rights, 689, 829, 884; Gould on Law of Waters, 497; *Peffer* v. *Penn. Water Co.,* 221 Penn. St. 578.)   In regard to the water furnished by it, no other or greater duty is imposed upon the defendant than upon the ordinary water company. (3 Dillon on Mun. Corp. [5th ed.] § 1317; *Wainright* v. *Queens Co. Water Co.,* 78 Hun, 146.) No obligation is imposed upon the city to supply the plaintiff with water which is chemically pure. (*Barney* v. *City of New York,* 83 App. Div. 237; *Penrhyn Slate Co.* v. *G. El. L. & P. Co.,* 181 N. Y. 80; *A. S., etc., Co.* v. *Godfrey,* 158 Fed. Rep. 225; *N. Y. City* v. *Pine,* 185 U. S. 93.)   In order to maintain an action for negligence it was incumbent upon the plaintiff to establish that it was free from any negligence which contributed to the injuries.   Not only did the plaintiff fail to do so, but it also conclusively proved that it was an active participant in the alleged wrong.   Knowing as it did the character and quality of the water it proceeded to use it and continued to use it for many years.   In some instances it purified it, but for any damage it sustained it was solely

responsible. (*L. & N. R. R. Co.* v. *S. T. Co.*, 138 Ala. 379; *F. S. S. Ry. Co.* v. *Maledon*, 79 Ark. 366; *Mayor, etc.,* v. *Dannenberg*, 113 Ga. 1111; *H. D. Co.* v. *Calkins*, 186 Ill. 104; *Chambers* v. *Kyle,* 87 Ind. 83; *Ludlow* v. *Steffen*, 19 Ky. L. Rep. 1671; *French* v. *Vining*, 102 Mass. 132; *Rudell* v. *G. R. C. S. Co.*, 136 Mich. 528; *Gniadck* v. *N. I. & B. Co.*, 73 Minn. 87; *Harrison* v. *M. P. Ry. Co.*, 88 Mo. 625; *Mahoney* v. *Kansas City*, 106 Mo. App. 39.) Defendant is not responsible for the damages which the plaintiff sustained for the reason that in supplying water to its inhabitants a municipality acts in its governmental capacity, as a representative of the state and as one of its political subdivisions, instead of in its capacity as a private municipal corporation. (*S. F. & M. Ins. Co.* v. *Village of Keeseville*, 148 N. Y. 46; *Hughes* v. *City of Auburn*, 161 N. Y. 96, 106; *Lefrois* v. *County of Monroe*, 162 N. Y. 563; *Corbett* v. *St. Vincent's Industrial School*, 177 N. Y. 16; *United States* v. *Sault Ste. Marie*, 137 Fed. Rep. 258; *Wright* v. *Augusta*, 78 Ga. 241; *Davis* v. *Lebanon*, 108 Ky. 688; *Terrell* v. *Louisville Water Co.*, 127 Ky. 77; *Aschoff* v. *Evansville*, 34 Ind. App. 25; *Brink* v. *Grand Rapids*, 144 Mich. 472; *Miller* v. *Minneapolis*, 75 Minn. 131; *Rice* v. *St. Louis*, 165 Mo. 636; *Edgerly* v. *Concord*, 62 N. H. 8.)

HISCOCK, J. The plaintiff for several years has been the owner of a large factory at Steinway on Long Island, where it has been engaged in the manufacture of logwood extracts or dyes, and during part of that period it has been supplied by the defendant through its regular system with water which in part was pumped by the defendant itself and in part supplied under a contract with a private corporation. The basis of plaintiff's complaint is that the water thus supplied contains so large a percentage of chlorine that it is unfit for plaintiff's purposes without special preparation which is so expensive

as to prevent any profits in the latter's business. The cause of this impurity is that the wells from which the water supply is drawn are situated so near to the ocean that when they are pumped vigorously sea water drains through into the wells and causes the trouble above mentioned.

Originally the action was brought as an equitable one by the plaintiff apparently as a taxpayer seeking to enjoin the city from pumping and from receiving from the private company water from the sources in question, and also asking for damages. On the trial the action became transformed into one of negligence, in which the plaintiff sought to recover damages because of the impure water furnished to it.

While plaintiff's case does seem to be one of considerable hardship, since at the time when it built its factory no such trouble existed with the water supply as is now shown, there nevertheless seem to be obstacles in the way of its present quest of relief of which some are insuperable and will be discussed.

The first question which arises is whether the judgment dismissing plaintiff's complaint is one on the merits or one merely of nonsuit. The proceedings on the trial were somewhat informal and out of the ordinary course of procedure. The learned trial judge apparently reached the conclusion early in the trial that plaintiff was prevented from recovering by fundamental principles of exemption from municipal liability, and plaintiff at various points was prevented from giving evidence by the statement of the justice that he would assume the facts to be as alleged in the complaint or as stated by him at the time, and when the evidence was closed he indicated that he would grant a motion for a nonsuit. Unfortunately, however, for the plaintiff it and the defendant decided to submit requests for findings, and those submitted by the former, numbering thirty-seven requests to find facts and several requests to find conclusions of

law, were all passed on by the trial justice, and the result was that, between passing on these requests and various others which I understand to have been submitted by the defendant, findings were made generally on the merits of the action and on which a judgment was entered dismissing the complaint. No application was made by the plaintiff to have this disposition amended or corrected so as to conform with the informal announcement made on the trial that a nonsuit would be granted, and the question is now first discussed before us.

I see no way in which the plaintiff can escape from the judgment as one on the merits or from the binding force of the findings made by the trial court and unanimously affirmed by the Appellate Division. The situation seems to be clearly covered by the decision in *Keyes* v. *Smith* (183 N. Y. 376). That case was one in equity, and at the close of the plaintiff's evidence the defendant offered no evidence but moved for a dismissal of the complaint on the ground that there was no evidence to sustain the alleged cause of action. No ruling was made on this motion, but subsequently a decision was rendered in accordance with section 1022 of the Code of Civil Procedure and expressed in findings negativing the allegations made by the plaintiff and which it was necessary for him to sustain by evidence in order to succeed, and judgment was entered in accordance therewith which did not in terms express that it was on the merits. It was held that such judgment was not one of nonsuit but one on the merits. It was further held that plaintiff, by merely excepting to the unfavorable findings of fact and conclusions of law, waived his right to insist that there had not been a trial and determination of the whole issue in favor of the defendant; that he should have moved the court to correct the judgment roll in that respect and should not have waited until the question was raised on appeal. (See, also, *Bliven* v. *Robinson,* 152 N. Y. 333; *Deeley* v. *Heintz,* 169 N. Y. 129.)

The case in coming within the authority of those above cited differs from that of *Place* v. *Hayward* (117 N. Y. 487), cited by the appellant, where the plaintiff on settlement of a case after a trial before a referee promptly made a motion to have the judgment and findings modified so as to show that the former was one of nonsuit and not one upon the merits.

Thus we are compelled to consider plaintiff's appeal in the light of the facts as they have been established by the unanimously affirmed findings of the trial court.

Plaintiff claims that the defendant has been guilty of negligence, both because of the water which it has furnished and because of the failure to furnish proper water. At the threshold of this complaint lies the query whether the defendant in operating a municipal system for supplying water to ordinary customers on payment of rates was acting in a governmental capacity or as the proprietor of a corporate business wherein it was subject to many of those principles of liability which would apply to a private individual in the conduct of a similar business. If the defendant was acting in a governmental capacity it is so plain that it would not be liable in answer to plaintiff's complaint that there would be no need for discussion, but on this question I agree with the contention of the plaintiff that it was not thus acting. The claim of the defendant to the contrary is largely based on the case of *Springfield F. & M. Insurance Co.* v. *Village of Keeseville* (148 N. Y. 46).

The complaint in that case in substance was that the defendant having availed itself of the right to maintain a municipal water works system operated the latter so negligently and inefficiently that proper fire protection was not afforded whereby the plaintiff suffered damages. It was held, Judge GRAY writing for a unanimous court, that the defendant was acting in a governmental capacity and was not liable. But of course that decision and opinion are to be read in the light of the facts which were

involved. The village maintained a fire department and concededly in so doing it was discharging a governmental function. As a necessary element in the maintenance of the fire department it undertook to supply water for fire purposes and in so doing its character and the nature of the acts which it was performing were not different than they were when it supplied engines or men. It was no more liable because the pipes for supplying water were clogged up or broken than it would have been if one of the engines had become out of repair or an insufficient force of men had been maintained for operating the engine and the water. But in the present case, when in accordance with the powers conferred on it, the city undertook to maintain a municipal water system and to supply water to private consumers at a fixed compensation, it was not acting in such capacity as above stated. It entered on an enterprise which involved the ordinary incidents of a business wherein was sold that which people desired to buy and which might become a source of profit, and under these circumstances it became liable for breach of contract or for negligence as the proprietor of a private business might become. (*Maxmilian* v. *Mayor, etc., of N. Y.*, 62 N. Y. 160; *Matter of Rapid Transit Commissioners*, 197 N. Y. 81; *Messersmith* v. *City of Buffalo*, 138 App, Div. 427; *Piper* v. *City of Madison*, 122 N. W. Rep. 730; *Lynch* v. *Springfield*, 174 Mass. 430.)

But this being so, I am still unable to discover any finding of fact or any undisputed evidence which the court refused to incorporate in a finding of fact, which requires or permits the conclusion that this defendant has been guilty of any negligence toward the plaintiff.

There was no contract between the defendant and the plaintiff whereby the former undertook to supply proper water and of which it made a breach for which recovery can now be had. Moreover this is an action of negligence and not for breach of contract.

Plaintiff is not entitled to recover on account of the

impure water which has been supplied to it within the principles of those cases which recognize the rule of liability where a municipality negligently supplies impure water to a consumer who in ignorance of its quality uses the same and suffers. In this case it appears without dispute that the plaintiff understood the character of the water which was being supplied to it and it could not voluntarily use it with knowledge of its impurities and then recover damages because of them.

There remains so far as I can see as the only other basis for a claim of recovery, the one that the city was bound to find some other source of supply from which it could have furnished to plaintiff satisfactory water.

The proposition is stated by the learned counsel for the appellant in the form that the charter imposes " upon defendant the duty to see that all proper measures are taken to preserve the purity of the water for the use of the inhabitants."

In discharging such a function as that of furnishing water to citizens the municipal authorities are necessarily invested with a wide discretion which is not subject to judicial review. (*Mills* v. *City of Brooklyn*, 32 N. Y. 489.) Under any ordinary circumstances which do not involve bad faith or a waste of public funds they must decide whether one source or another shall be sought and after the supply has been obtained no court can say that mains must be laid in every street or that every resident must have water best suited for his particular needs.

When we consider the findings in this case in the light of these simple and indisputable principles we perceive at once how far they fall short of sustaining a recovery on the ground we are now considering. Some of these findings are to the effect that there has been no waste of public funds in furnishing the present supply; that the water in question is used by the residents of the neighborhood in which plaintiff's factory is situated for domestic purposes and also for industrial and manufacturing pur-

poses; that the presence of chlorine in the water has been and is injurious to the boilers and manufacturing processes of the plaintiff; that it is not suitable in its natural state for the peculiar and uncommon uses to which it is put in the conduct of the plaintiff's business and is not economically suitable for industrial steam power use; that there is no other manufacturing industry except the plaintiff's in said locality for which said water is unsuitable and that it is suitable for domestic household uses and has not been, and is not, injurious to public health.

The court refused to find, and there was no uncontradicted evidence showing that it was possible for defendant to procure any other supply of better water within any reasonable limit of expenditure.

These findings, taken together, indicate that the water now being furnished is reasonably satisfactory for all purposes except the "peculiar and uncommon uses to which it is put in the conduct of the plaintiff's business," and do not indicate that there is any other better source of supply which is reasonably available.

Under such circumstances we cannot say that error was committed in holding the defendant not liable and in dismissing the complaint, and the judgment, therefore, must be affirmed, with costs.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur; VANN, J., absent.

Judgment affirmed.