ARTHUR H. CANAVAN, Appellant, *v.* CITY OF MECHANIC-
VILLE, Respondent.

Municipal corporations — municipality, in distributing water for a price to its inhabitants, governed by rules applicable to private corporation — not an insurer nor liable as guarantor of quality of water furnished — furnishing of water a sale of goods within meaning of section 96 of Personal Property Law, but a warranty that same is fit for human consumption not implied.

1. A municipal corporation in operating a waterworks system and distributing water for a price to its inhabitants acts in its private or

proprietary capacity, in which it is governed by the same rules that apply to a private corporation so acting.

2. A private water company or a municipality is not an insurer nor liable as a guarantor of the quality of the water it furnishes to its customers in the customary means of pipes and faucets, and cannot be held liable for injuries caused by impure water furnished by it unless it knew or ought to have known of the impurity; its duty is that of exercising reasonable and commensurate care and diligence in providing an adequate supply of wholesome water at all times.

3. The furnishing of water, through a system of waterworks, by a water corporation, either private or municipal, to private consumers, at a fixed compensaation, is a sale of goods within the meaning of section 96 of the Personal Property Law (Cons. Laws, ch. 41).

4. A taker of such water, however, does not by the mere taking make known, either expressly or by implication, to the seller of the water the particular purpose for which the water is required and cause it to appear that he relies as to the wholesomeness of the water on the seller's skill or judgment. A warranty, therefore, that the same is fit for human consumption cannot be implied. (*Rinaldi* v. *Mohican Co.*, 225 N. Y. 70, distinguished.)

*Canavan* v. *City of Mechanicville*, 190 App. Div. 252, affirmed.

(Argued June 11, 1920; decided October 22, 1920.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered February 19, 1920, which reversed an order of Special Term overruling a demurrer to the second cause of action set forth in the complaint and sustained such demurrer.

The following question was certified: "Do the allegations set forth in that portion of the plaintiff's complaint designated as a separate and second cause of action state facts sufficient to constitute a cause of action?"

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harold H. Corbin* for appellant. The defendant, in operating a system of water supply, acted in its corporate capacity, as distinguished from an exercise of its governmental functions, and is liable in every respect as an

individual would be under like circumstances. (*Bailey* v. *Mayor*, 3 Hill, 531; 2 Denio, 433; *Hand* v. *Brookline*, 126 Mass. 324; *Chicago* v. *Selz*, 202 Ill. 545; *Wagner* v. *City of Rock Island*, 146 Ill. 138; *Lloyd* v. *Mayor, etc.*, 5 N. Y. 369; 4 Dillon on Mun. Corp. §§ 1666, 1667; *Oakes Mfg. Co.* v. *City of New York*, 206 N. Y. 221; *Bradley* v. *Village of Union*, 164 App. Div. 565; 221 N. Y. 569; *Powers* v. *City of Mechanicville*, 163 App. Div. 138.) The defendant, being subject to the same rules that obtain as between individuals, is liable on this sale of water for immediate human consumption, just as surely as an individual would be liable upon the sale of milk or any other food for immediate human consumption. (*Race* v. *Krum*, 222 N. Y. 410; *Rinaldi* v. *Mohican Co.*, 225 N. Y. 70; *Danaher* v. *City of Brooklyn*, 51 Hun, 563; 119 N. Y. 241; *Oakes* v. *City of New York*, 206 N. Y. 221.)

*Edward C. McGinity* for respondent.

COLLIN, J.   The facts constituting the alleged second cause of action, in effect, are: The defendant, a municipal corporation, authorized by its charter, provided, maintained and controlled sources of water supply to furnish necessary water for drinking and domestic uses to the inhabitants of the defendant and means for conducting water from the sources through the streets and to the dwelling houses and other places where it was delivered and sold and consumed by the inhabitants of the defendant; the defendant furnished and supplied, for a compensation, water for drinking and domestic uses to the premises occupied by the plaintiff and his family, consisting of five children, which water, to the knowledge of the defendant, was customarily regularly used and drunk by them; the water contained the germs of typhoid fever, through the drinking of which the plaintiff and his children became ill with that disease and plaintiff sustained the damages demanded; "in thus furnish-

ing and selling such water to its inhabitants and citizens, for domestic consumption and to the plaintiff's household for like use, the defendant warranted the same to be pure, wholesome and fit and proper for human consumption and for drinking purposes and free from poison and disease-breeding germs;" the plaintiff relied on the warranty and had no means of knowing and did not know the condition of the water; the warranty was broken by the defendant. The respective counsel have the identic understanding, and, correctly under the allegations, that the alleged warranty was not express, and was created, through necessary implication, in furnishing and selling the water for domestic consumption. The question we are to determine is whether or not a warranty was so created.

While the business of maintaining a municipal water system and supplying water to private consumers at fixed compensation is public in its nature and impressed with a public interest, it is not an exercise of governmental or police power. A municipal corporation in aggregating and supplying water for the extinguishment of fires discharges a governmental function. In operating a water works system, distributing water for a price to its inhabitants, it acts in its private or proprietary capacity, in which it is governed by the same rules that apply to a private corporation so acting. (*Oakes Manufacturing Co.* v. *City of New York,* 206 N. Y. 221; *Springfield Fire & Marine Ins. Co.* v. *Village of Keeseville,* 148 N. Y. 46; *Lefrois* v. *County of Monroe,* 162 N. Y. 563, 566, 567.) The conclusions of the text writers and the decisions of the courts, apart from those in this case, have been uniformly that a private water company or a municipality is not an insurer nor liable as a guarantor of the quality of the water it furnishes to its customers in the customary means of pipes and faucets, and cannot be held liable for injuries caused by impure water furnished by it unless it knew or ought to have known of the impurity; its

duty is that of exercising reasonable and commensurate care and diligence in providing an adequate supply of wholesome water at all times. (1 Waters & Water Courses [Farnham], p. 829; 3 Municipal Corporations [Dillon 5th ed.], section 1316; *Hayes* v. *Torrington Water Co.,* 88 Conn. 609; *Hamilton* v. *Madison Water Co.,* 116 Me. 157; *Green* v. *Ashland Water Co.,* 101 Wis. 258; *Jones* v. *Mount Holly Water Co.,* 87 N. J. L. 106; *Danaher* v. *City of Brooklyn,* 119 N. Y. 241; *Buckingham* v. *Plymouth Water Co.,* 142 Penn. St. 221; *Brymer* v. *Butler Water Co.,* 172 Penn. St. 489; *Milnes* v. *Mayor, etc.,* L. R. 10 Q. B. Div. 124; L. R. 12 Q. B. Div. 443; 11 App. Cases, 511; *Stein* v. *State,* 37 Ala. 123.)

These conclusions and decisions would guide and govern in the instant case without further discussion were it not for our decision in *Rinaldi* v. *Mohican Company* (225 N. Y. 70). We there adjudged that as a rule of common law a retail dealer of articles of food in selling for immediate consumption impliedly warrants that the same is fit for human consumption. We further adjudged, however, that the statute (Personal Property Law [Cons. Laws, chap. 41], section 96), rather than the common law, applied to such selling, and the mere purchase by a customer does by implication make known to the vendor the purpose for which the article is required and show reliance on the vendor's skill or judgment unless the vendor has not the opportunity to examine the article sold or the customer by inspection and selection affirmatively relied upon his own skill or judgment. The case here is not within the section 96 or the *Rinaldi* decision. The section, in so far as applicable, reads: " Subject to the provisions of this article and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale except as follows: 1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for

which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. 2. * * *. 3. * * *. 4. * * *. 5. * * *. 6. * * *." The statute contains the definition: " ' Goods ' include all chattels personal other than things in action and money. The term includes implements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale." (Section 156, subd. 1.) The furnishing of water, through a system of water works, by a water corporation, either private or municipal, to private consumers at a fixed compensation is a sale of goods within the meaning of the statute. That the furnishing is without profit to the corporation is weightless. The corporation segregates the water supplied from its sources in reservoirs or pipes of its own and delivers it to those who demand and receive it at a fixed compensation or price. It is a sale of goods as fully as if the water were collected and delivered in bottles for a price. (*Mayor, etc., of Jersey City* v. *Town of Harrison,* 71 N. J. L. 69; affd., 72 N. J. L. 185; *Oakes Mfg. Co.* v. *City of New York,* 206 N. Y. 221, 228.)

A taker of water from the pipes of a system of water works of a water corporation or a municipality does not by the mere taking make known, either expressly or by implication, to the seller of the water the particular purpose for which the water is required, and cause it to appear that he relies as to the wholesomeness of the water on the seller's skill or judgment. Under the allegations before us the alleged warranty springs solely from the furnishing and taking of the water. The decisions we have cited hold, in effect, that a water company cannot, has not been understood to and is not understood to, supply wholesome water at all times under all

conditions. It is a matter of common knowledge that human skill or judgment cannot unceasingly and under all conditions and circumstances see to it that no unwholesome water is furnished. It is also a matter of common knowledge that a company or municipality does not know that any particular use is to be made of any particular portion taken. Of the water taken the part not used for drinking or human consumption is much the greater. The ordinary conditions which uphold the liability of the marketman or grocer do not exist, and are commonly known not to exist, as to a water company. The former from time to time selects the meats or food stuffs which he will offer as food. He may reject or accept. Accepting, he takes the articles into his actual possession and care, makes them inaccessible to any one other than himself and his employees or to anything objectionable or harmful. He sells them for food, as he is bound to presume in the absence of contrary information, and in selling has full opportunity to inspect and use his skill and judgment. We are speaking of the ordinary conditions, under which the seller may, in his skill and judgment, select the articles he sells, has the exclusive possession and care of them before selling, knows he is selling for food, and in selling has reasonable and adequate opportunity for inspection. A corporation furnishing a community with water for the general and ordinary purposes must get the water from sources which are practically available. It frequently is true that the corporation is organized by a few men of the community, not so much for the sake of profit as for the comfort and welfare of the people. The sources of supply are necessarily restricted — they must be the adjacent river, streams, pond or lake. Not infrequently the sole available source is, and is known by the people to be, unceasingly unwholesome, and the water from it can be made safe for human consumption only through mechanical or chemical processes. The sources of supply necessarily

drain extended watersheds; the lands of which are used for many and various purposes. Frequently, even generally, it is physically impossible to patrol and protect them from possible contamination were it financially practicable. The waters are never in the actual possession and care of the seller. Whether subjected to filtration or purification or not they are aggregated in outdoor reservoirs. It is not possible for them to be taken into the physical possession of the corporation. They cannot while in the reservoirs be made inaccessible to the smaller or burrowing animals, reptiles, vermin or to malicious or irresponsible persons. The possibilities of contamination are many and varied. There is no conceivable method in which the corporation can absolutely secure and maintain to the waters wholesomeness and freedom from pollution. There is no method of analysis or inspection by which the corporation can with certainty furnish and know that it is furnishing no other than wholesome water. It is conceivable that between the time water is withdrawn from the distributing reservoir as a sample for testing through analysis and the termination of the analysis the water in the reservoir may pass from innocence to viciousness — it is quite possible that the reservoir of wholesome water in the morning may be the reservoir of harmful water in the evening. As a matter of fact, consumers of a public water supply do not, generally speaking, regard the corporation as a warrantor or insurer of the wholesomeness of the water. They expect the company to exercise a high degree of vigilance and faithfulness in their duty to furnish them with wholesome water, but realize that to some extent risk attends its consumption. Such are the facts, knowledge of the existence of which comes to ordinary intelligence through common observation and experience. The *Rinaldi* case should not be applied to them. It might well be applicable to a case in which water bottled or susceptible to inspection in the bottles by the seller was sold and purchased, as a

specific article, for drinking; but to apply it to a corporation operating a water works system in the way usual and known to all, is contrary to the common law, not contemplated by the statute, oppressive to the corporation and of very doubtful benefit and perhaps of serious detriment to the inhabitants of municipalities. Men will not form corporations which the court will hold obligated, at a risk which may bankrupt and destroy them, to enter into a guaranty or warranty which they cannot fulfill.

The order should be affirmed, with costs, and the questions certified answered in the negative.

POUND, J. (dissenting). I dissent. If we adopt, as seems inevitable, the theory that the water supplied by a municipal corporation for domestic purposes is sold as such by it to the consumers, I fail to comprehend how we can escape the application of the doctrine of implied warranty of wholesomeness. The complaint alleges that defendant furnished plaintiff water for drinking purposes. The buyer relies on the city, the seller, to furnish pure and wholesome water unless the city gives notice, as it may, for its protection, that the water supply is not warranted safe for consumption. The buyer himself does not select the article nor rely on his own skill and judgment. He takes what is offered by the city. The city, in a sense, in distributing water through its mains to consumers is not selling a commodity so much as rendering a public service. Its duty, apart from statute, is to exercise reasonable care in performing such service. But it cannot be denied that the water in the pipies is personal property and the subject of sale. (*Ferens* v. *O'Brien*, L. R. 11 Q. B. Div. 21.) The Personal Property Law (Sec. 96), therefore, applies to such selling and the implied warranty attaches thereto. (*Rinadli* v. *Mohican Co.*, 225 N. Y. 70; 5 Cornell Law Quarterly, 479.)

31

The order appealed from should be reversed and the order of the Special Term affirmed, with costs in this court and in the Appellate Division, and the question answered in the affirmative.

ELKUS, J. (dissenting). I dissent. The complaint contains two causes of action. The first, which is not demurred to, alleges: That the plaintiff is a resident and householder of the city of Mechanicville, leasing and occupying as a dwelling, with his five minor children, the premises No. 613 Chestnut street. The defendant, for two years prior to March 1, 1918, supplied drinking water to plaintiff and his family for a compensation paid to defendant, *but was negligent in so supplying water, causing the plaintiff and his children to become ill with typhoid fever.*

The *second* cause of action alleges the same state of facts and further that in furnishing such water the defendant *warranted* the " *same to be pure, wholesome and fit and proper for human consumption and free from poison and disease breeding germs;* " that plaintiff relied on this warranty, which was broken, causing the plaintiff and his family to become ill with typhoid fever.

The plaintiff's theory in the second cause of action is that when a city sells water for human consumption, it impliedly warrants that the water is fit to drink; that a city upon engaging in a separate corporate enterprise not connected with its governing powers subjects itself to the same rules of law which affect individuals or business corporations engaged in a similar business. It is not claimed that there is an express warranty as to the quality of the water.

The first important question is as to whether the city of Mechanicville was acting in its public, governmental function or in its private capacity in supplying water. The rule is general that a municipal corporation is not liable for torts or injuries inflicted in the fulfillment of

its public functions for, when acting in such capacity, its character is that of a sovereign. (*Missano* v. *Mayor, etc., of N. Y.,* 160 N. Y. 123; *Lynch* v. *Mayor, etc., of New York,* 76 N. Y. 60.)

In Illinois, it has been held that a city selling water is not exercising a public but a private power. (*City of Chicago* v. *Selz, Schwab & Co.,* 202 Ill. 545; *Wagner* v. *City of Rock Island,* 146 Ill. 139.) We have held in *Oakes Manfg. Co.* v. *City of New York* (206 N. Y. 221, 228) that when the city ·of New York " undertook to maintain a municipal ·water system and to supply water to private consumers at a fixed compensation, it was not acting in such capacity as above stated (of a public corporation). It entered on an enterprise which involved the ordinary incidents of a business wherein was sold that which people desired to buy and which might become a source of profit, and under these circumstances it became liable for breach of contract or for negligence as the proprietor of a private business might become."

The question whether this particular municipality in operating this same water supply system was performing a governmental or private function has been before the courts of this state, and the Appellate Division, third department, has characterized it as a private, earning enterprise and a " function of transportation and business corporations." (*Powers* v. *Village of Mechanicville,* 163 App. Div. 138, 142, 143.)

It is well established in this state that where a city is negligent in failing to supply pure water to its inhabitants, it is liable for injuries. (*Stubbs* v. *City of Rochester,* 226 N. Y. 516.)

In its brief, the defendant concedes that the first cause of action is well pleaded. This concession removes all question upon this appeal as to the character of the act being a private one and the defendant is bound in the same manner as any private party engaged in supplying water for general consumption.

The next question to be considered is whether there was a bargain and sale between the city of Mechanicville and the plaintiff, with the usual incidents accompanying a sale between tradesman and customer. Is water a commodity — a property? This court once said: "Like air, light, or the heat of the sun, it (water) has none of the attributes commonly ascribed to property, and is not the subject of exclusive dominion or control." (*Sweet* v. *City of Syracuse,* 129 N. Y. 316, 335.) That case, however, referred to the waters and basin of Skaneateles lake and its appropriation to public use for a natural reservoir and feeder to the Erie canal when subsequent thereto the legislature permitted the city of Syracuse to divert whatever waters were not thus needed in order to supply the city of Syracuse with water. This was held not to be an appropriation of public property for private use, because the state could not acquire the mass of natural, flowing water, although it did and could acquire the right of its use. The flowing water of a natural stream does not admit of absolute ownership. (40 Cyc. 553; *Quill* v. *Mayor, etc., of N. Y.,* 36 App. Div. 476, CULLEN, J.; *Oakes Manfg. Co.* v. *City of New York,* 206 N. Y. 221, 228.) Water in a natural basin formed by the hand of nature is free and not property, but when taken and collected so that control is exercised over its accumulation and outflow, it becomes the subject of possession and property.

The facts in this case as conceded by the demurrer to the complaint do not disclose the source of the water supply of the defendant. The fact admitted is that the city of Mechanicville was authorized and empowered "to construct, maintain, manage and control a system of water supply to furnish necessary water for drinking and domestic uses to the inhabitants" and did exercise its powers. It did provide "such water supply and means for conducting the same from such sources through the streets to the dwelling houses" where the same

" were delivered and sold " to the inhabitants, including the plaintiff, for a compensation paid therefor to the defendant and that such water was customarily regularly used and drunk by the plaintiff and his household to the knowledge of the defendant. (Charter of the City of Mechanicville, Laws of 1915, chap. 170.)

When a municipality engages in a business, it assumes the same liability as rests upon an individual. We may take judicial notice that in the practical operation of municipal water plants, the water supplied comes from wells, springs or streams, constituting a water basin. The burden of collecting only pure water or of purifying water permitted to flow through pipes for the sanitary and potable uses of the community is upon the corporation controlling the supply.

It will thus be seen that the alleged warranty does not spring solely from the furnishing and taking of the water. The statutes of the state of New York contain ample provisions for the examination and testing of water furnished for drinking purposes for purity and freedom from contamination by disease breeding germs as it enters the distributing pipes. The prevailing opinion correctly says that the people exact a high degree of diligence and care from a municipality which supplies water. The statutory provisions provide a means to protect potable waters used to supply the needs of cities and villages of this state.

Water, in pipes, separated from its source, or from the body of which it was a part, may be bought and sold like other commodities. It is a matter of common knowledge that water is sold in bottles or other containers. It is sold in solidified form as ice.

Water thus sold by the respondent, whether delivered in a container at the plaintiff's door or more conveniently through pipes into his house and controlled by the turning of a faucet, is property. (*Bailey* v. *Mayor, etc., of N. Y.*, 3 Hill, 531; 2 Den. 433; *Dartmouth College*

v. *Woodward,* 4 Wheat. 518; *Philips* v. *Bury,* 1 Ld.
Raym. 5; 2 T. R. 352; *Allen* v. *McKeen,* 1 Sumner, 297;
*People* v. *Morris,* 13 Wend. 325, 331, 338; 2 Kent's Com.
[4th ed.] 275; *Bank of U. S.* v. *Planters Bank,* 9 Wheat.
904, 907; *Clark* v. *Corp. of Washington,* 12 id. 40; *Mood-
alay* v. *East India Co.,* 1 Brown's Ch. 469; 2 Inst. 703;
*Thursfield* v. *Jones,* Sir T. Jones, 187; *Rex* v. *Gardner,*
1 Cowp. 79; *Mayor of Lynn* v. *Turner,* Id. 86; *Henly* v.
*Mayor of Lyme,* 5 Bing. R. 91; 1 Bing. N. C. 222; S. C.
in the House of Lords.)    The owners of land over which
such conduits pass cannot exercise the common law
right they possess as to natural streams and use the
flow by tampering with the pipe.

The plaintiff invokes the rule that accompanying all
sales by a *retail* dealer of articles of food for immediate
consumption there is an implied warranty that the same
is fit for consumption. (*Race* v. *Krum,* 222 N. Y. 410;
*Rinaldi* v. *Mohican Co.,* 225 N. Y. 70.)    But this rule was
modified in 1911 by section 96 of the Personal Property Law
(Cons. Laws, chap. 41), which provided there is no war-
ranty as to the quality or fitness for any particular purpose
of goods sold, " * * * except where the buyer, expressly
or by implication, makes known to the seller the particular
purpose for which the goods are required, and it appears
that the buyer relies on the seller's skill or judgment."

" An implied warranty of personal property is a
collateral contract attending a sale thereof, so that,
unless there be a sale with the ordinary circumstances
of transfer of title and possession of the thing sold, for
a price given for that particular thing, the peculiar facts
out of which a warranty is implied do not exist, and
there is no warranty."

Because of the facts alleged in the complaint and
admitted in the demurrer, it seems clear that there was
a sale of water by the municipality to the plaintiff. The
next question to be considered is: " Was there an
implied warranty that the condition of the water was

such that it would be fit for human consumption?" An express warranty is not pleaded or claimed. Did not the appellant make known to the respondent the particular purpose for which the goods were required and does it not appear that the appellant relied upon the municipality's skill and judgment? We have held that accompanying all sales by a retail dealer of articles of food for immediate use there is an implied warranty that the same is fit for human consumption. (*Race* v. *Krum*, 222 N. Y. 410.) We have also held that where the buyer may assume that the seller has the opportunity to examine the article sold, unexplained, that is also conclusive evidence of reliance on the seller's skill and judgment. There is no allegation here that the appellant relied on the seller's skill or judgment, nor is there an allegation in so many words that the seller had the opportunity to examine the water, but there is an allegation that the defendant (the seller) "did * * * provide, maintain, manage and control source of water supply and means for conducting the same from such source through the streets and to the dwelling houses and other places where the same was delivered and sold to and consumed by the inhabitants of said city, and that the defendant at all such times did furnish and supply water for drinking and domestic uses to the aforesaid premises rented and occupied by the plaintiff."

If the respondent managed and controlled the water supply and furnished water for drinking purposes, it surely had full opportunity to examine its water, the sources of its supply and its condition, so that it could ascertain if it was free from deleterious or injurious matter, just as a druggist selling ice cream can ascertain it to be free from poisonous matter.

As has already been shown, the legislature has provided a means by which water may be protected by the public authorities in order to insure its purity and safeguard the public health. In this day of scientific analysis, the

purity of water can be readily ascertained, and the duty of constant vigilance to protect the health of citizens should be imposed on municipalities. The individual injured through misrepresentation that all fair means so to do have been taken should be allowed to recover upon the implied warranty. In fact, because of the position which a municipality holds toward those who receive water from it, undoubtedly there would be greater reliance upon the purity of the water and upon its implied warranty that it was fit to drink than upon that of private parties. Municipalities now place themselves far closer to their citizens than ever before. They furnish many things besides water. This new relationship implies increased duty.

The public welfare demands that a municipality supplying such an important element in the life of the people as water should be held to a strict liability if they fail to fulfill their full duty in this regard. The municipality, through its employes whom it selects, has every opportunity to test the water supply, regulate conditions at the source, examine the springs and wells which maintain the supply and to apply those tests which science has discovered which ascertain whether or not water is pure and fit for the purpose for which it is delivered. The plaintiff had a right to rely upon the skill and judgment of the defendant. A competent analysis would have disclosed impurities in any appreciable quantity and suitable precautions could have been taken. The defendant, the municipality, had every means of ascertaining whether the water which it supplied was fit for the purpose it impliedly warranted it to be, viz., to drink.

The warranty as to the purity of the water supplied to the inhabitants of a city should be implied. When a municipality fails to fulfill the duty placed upon it, and the warranty it makes when it undertakes to supply its inhabitants with the water necessary to human life

and by reason thereof certain individuals suffer damage, then the municipality must indemnify such individuals. The taxpayers of the municipality, like the stockholders of a corporation, may be injured by the installation of incompetents in office, but this should not affect the course of justice in rendering relief to those injured by the incompetence or implied .misrepresentation brought about by such officials. The remedy of the taxpayer is in the removal of the incompetent official.

Human life and the health of mankind is of the greatest importance because the greatest asset which the state has is the lives of its people and any rule of law which tends to enhance and improve the general health and the life of the people of the state should be upheld.

The order of the court below should be reversed and the order of the Special Term overruling the demurrer should be affirmed, with costs in both courts.

HISCOCK, Ch. J., MCLAUGHLIN and ANDREWS, JJ., concur with COLLIN, J.; POUND and ELKUS, JJ., read dissenting memoranda; HOGAN, J., dissents generally.

Judgment affirmed.