OPINION OF THE COURT
Kenneth R. Fisher, J.
Plaintiff moves for a preliminary injunction restraining defendants from trespassing on and interfering with the waterlines and facilities within a territory described by plaintiff as the “Direct Retail District” and all extensions thereto and interfering with the plaintiff’s ability to supply water to this area. The motion was made when the Town, pursuant to a July 23, 1998 Interim Agreement with the Village, sought to approve the Heritage Park development off Staci Lane, north of Ridge Road in the Town of Webster, and approved water-main hookups as part of that development. Although all the relevant easements for watermain hookups run in favor of the Town, the Village contends that it owns the watermain and that defendants are trespassing.
In order to obtain a preliminary injunction, plaintiff has the burden of proving the likelihood of ultimate success on the merits, irreparable harm, and a balancing of equities in its favor. Defendants contend that plaintiff failed to meet its burden of proof on each of these elements. The court finds that, based on the clear language of the governing agreements and the relevant statutes, plaintiff wholly failed to establish a likelihood of success in the underlying action on the merits. (Bero v Bero, 143 AD2d 866, 867-868 [2d Dept 1988].)
LIKELIHOOD OF SUCCESS ON THE MERITS
The Village’s claim is premised in large part on the supposed creation of a Direct Retail District, the existence of which, according to the Village, preserves to the Village the right to supply water therein under the various agreements executed among the Village, the Town, and the Water Authority. According to the Village’s theory of the case, the Heritage Park development lies outside any of the duly constituted Town water districts covered by the interim agreements, the Town resolutions providing for the transfer of supply to the Water Authority, and the Department of Environmental Conservation (DEC) permit issued to the Water Authority, and instead lies within a duly constituted Direct Retail District providing for water supply by the Village.
*958 Defendants dispute the bona fides of the Direct Retail District. They contend that the area in question really is a fire protection district authorized in 1936 by the Webster Town Board. Defendants contend further that the Village never had any authority under the Village Law to create a “water district” outside of Village boundaries, and that indeed no Village enactment purported to do so. Defendants acknowledge that the Village may contract in its proprietary capacity to install water-mains and sell surplus water outside its municipal borders, but they maintain that such contracts authorizing it to supply water throughout the Town, and to the Heritage Park development in particular, expired in 1997, as provided in the 1987 agreement between the Village and the Town, and as determined by this court in a prior action (Sup Ct, Monroe County, index No. 6281-98). Finally, and quite apart from the question of the Village’s asserted continued authority to serve Heritage Park and other areas of the so-called Direct Retail District, defendants contend that the Village transferred that authority by contract to the Town in the July 23, 1998 Interim Agreement between the Town and the Village, an arrangement permitted by a DEC water supply permit to the Water Authority and an agreement between the Town and the Water Authority. Under the Interim Agreement, the Town was vested with authority to approve and provide service to new developments within the Town, whether within an existing duly constituted Town water district or not.[1] Defendants do not contend that they may supply water outside of existing water district boundaries, but they allege without contradiction that duly enacted approvals either are or shortly will be in place extending an existing Town water district, the Hatch Road water district, to cover the area of the Heritage Park development by Town Board resolution. The Village makes no challenge to the Town’s authority to create or extend existing water districts except if such creation and extension would constitute an improper invasion of an existing Village water district, and it contends that the Heritage Park development lies within the Village’s Direct Retail District.
The Village fails to carry its burden to show a likelihood of success on the merits. There is no Direct Retail District as the *959 Village contends, or at least the Village wholly fails on this record to establish that it exists. No State law, Town or Village enactment is referred to, and defendants are correct to point out that the Village cannot unilaterally create a water district outside of its municipal boundaries. (Village Law § 11-1120.) The Village points to the formation in 1936 of a fire protection district generally along the lines of the claimed Direct Retail District, but this Town enactment cannot serve as authority for the Village’s position here. In its most recent affidavit (Shearer affidavit, Mar. 25, 1999), the Village points to the 1935 New York State Department of Environmental Conservation Water Power and Control Commission decision approving the Village’s water supply application as creating the Direct Retail District.[2] But approval of the Village’s application in 1935 did not serve also to create an extrastatutory water supply district outside the pertinent provisions of the Town Law and Village Law, and was not within the contemplation of the enabling legislation under which the New York State Department of Environmental Conservation operated in approving such applications. Indeed, the language relied on by the Village on page 4 of the 1935 decision does not purport to create a water supply district in any conventional sense of that term as defined in the Town or Village Law. At oral argument, the Village asserted principally that the area covered by the claimed Direct Retail District, which generally runs along the Village’s 12-inch Ridge Road main (from which other mains are connected, including the one at issue in the Heritage Park development),[3] is in reality a de facto Village water district which was recognized and approved, if not created, by the 1935 DEC Water Power and Control Commission decision. The Village claims that the defendants are estopped to deny the existence of this “de facto village district,” because the Town and Water Authority delineated the district in their own maps, which were also submitted to the DEC for the most recent permit in favor of the Water Authority.
*960 This argument also is without merit. “Municipal corporations are creatures of the state and have only such powers and authority as is conferred upon them by the Legislature and powers reasonably incident thereto.” (Whittaker v Village of Franklinville, 265 NY 11, 14 [1934]; see also, Incorporated Vil. of Atl. Beach v Kimmel, 18 NY2d 485, 488 [1966].)[4] The Village Law authorizes a village to, by resolution, establish a water works “for supplying the village and its inhabitants with water.” (Village Law § 11-1102.) In the course of constructing a village water works (Village Law § 11-1106), a village water commissioner may lay and maintain pipes anywhere along roads within the county or an adjoining county, if the water supply was contracted for outside village boundaries, “for the purpose of introducing water into and through the Village.” (Village Law § 11-1110.) The village water commissioners also “may sell to a corporation, individual or water district outside the village the right to make connections with the mains or reservoirs of such village for the purpose of drawing water therefrom and fix the prices and conditions therefor” unless “thereby the supply for the village or its inhabitants will be insufficient.” (Village Law § 11-1120.) Village water commissioners may extend the watermains outside the village limits (Village Law § 11-1122), which will serve customers outside the village secured by “contract with the town board on behalf of the town or a water supply, fire alarm or fire protection district thereof’ (Village Law § 11-1124 [1]), or “public corporation or improvement district which possesses the power to sell a supply of water.” (Village Law § 11-1124 [2].) Finally, village water commissioners may sell or lease the water supply and distribution system, or any part thereof upon certain conditions and specifications contained in Village Law § 11-1128.
No provision of the Village Law, or the General Municipal Law, however, authorizes the creation of a village water dis *961 trict,[5] and no provision entitles village water commissioners to sell water to anyone not within the village boundaries except by means of contract freely entered into by the contracting parties. (Matter of Marine Midland Natl. Bank v Village of Liberty, 58 Misc 2d 362 [Sup Ct, Sullivan County 1968, Cooke, J.].) Moreover, it is not within the power of a town to create a village water district within the town outside village boundaries, nor can the Town in this case be estopped to deny that which cannot, under governing legislation, exist. Plaintiff’s reliance on the Town Board’s 1936 resolution and its more recent maps is, therefore, unavailing.
Even if such an extraterritorial district could have been created under applicable law, the Village could claim no vested right to continue service in it anymore than a town water district can claim a vested right to continue serving a portion of its customers within a part of the district subsequently annexed by a newly formed village. Recognizing the policy of the Legislature to “exclude town special districts from villages (except under special circumstances) insofar as practicable, in order to give greater scope to the exercise of powers by [villages]” (Incorporated Vil. of Atl. Beach v Kimmel, 18 NY2d 485, 491 [1966], supra; see also, Rinas v Duryea, 278 App Div 419, 420 [3d Dept 1951], supra [“obvious statutory plan as created by the legislature was that special districts, such as water districts, should render services to areas outside of incorporated *962 villages, Town Law, § 190, and that the villages should render such services within their territorial limits”], affd without opn 304 NY 586 [1952]), the Court of Appeals has repeatedly held that a town special or water district partially incorporated by a village “has no vested right” to continue to serve customers in the incorporated area beyond the term of contracts (including those of indebtedness) in existence at the time of incorporation by a village. (See, Incorporated Vil. of Atl. Beach v Kimmel, supra, at 491 [and cases discussed therein]; Rinas v Duryea, supra.)
Indeed, in Rinas v Duryea (supra), it was held that the town district had no vested right to furnish previously undeveloped areas of its district when, contrary to the water district’s interests, the village contracted with an alternate water supplier to serve the new development situated in the previously undeveloped portion of the district within the village. By like reasoning, a village has no vested right to serve town customers outside the village boundaries in the absence of a duly executed and binding contract. Although our case presents the flip side of these cited cases involving village incorporation, the court discerns no different rule for application. The Village has no greater rights to serve Town customers (if existing contracts are not at issue) than a town water district has in serving village customers formerly within water district boundaries. Acceptance of plaintiffs position thus would upset the balance struck by the Legislature, as articulated in Kimmel (18 NY2d, supra, at 489-490, 491) and Rinas v Duryea (278 App Div, at 420).
As defendants contend, therefore, any Village effort to supply water outside of its municipal boundaries.must be carried out in its proprietary capacity and depends upon the existence of a valid contract. (Canavan v City of Mechanicville, 229 NY 473, 476 [1920]; Heritage Co. v Village of Massena, 192 AD2d 1039 [3d Dept 1993]; Fraccola v City of Utica Bd. of Water Supply, 70 AD2d 768 [4th Dept 1979]; NY Const, art VIII, § 2-a; General Municipal Law §§ 118, 118-a; Village Law § 11-1120.) Inasmuch as the Village’s last comprehensive water supply contract with the Town (of 1987) has now expired, the Village’s right to supply the Heritage Park development no longer exists unless authorized by the July 23, 1998 Interim Agreement. (Cf., 1981 Opns St Comp No. 81-48 [towns have authority to contract for a supply of water on behalf of water districts under Town Law § 198 (3) (b), and villages have authority to sell surplus water under Village Law § 11-1120, *963 but, excepting DEC approvals, no State agency “has regulatory powers with respect to the terms and conditions of such a contract” which “must be determined solely by the contracting parties” and “are a matter for negotiation between the parties”].) This conclusion is confirmed by the Village’s negotiation of the 1998 Interim Agreement with the Town. A draft agreement was sent out by the Town over Town letterhead to the Village containing language arguably (but not necessarily) preserving to the Village the right to supply water in undefined areas (the language in question — “outside the areas that will remain on the Village supply” — did not describe the areas of supply contemplated). The final version of the contract, however, reprinted over Village letterhead and fully executed by the parties, deleted this language and provided for an immediate takeover by the Town of the “review and approval, inspection, operations, maintenance and customer service of new main extensions and service connection installations in the Town.” (Emphasis supplied.) Given the drafting history, no ambiguity may be found in the final contract language. To the extent plaintiff reads any ambiguity into the final agreement, that ambiguity must be resolved against the party which drafted the final contract, i.e., the Village. (Lai Ling Cheng v Modansky Leasing Co., 73 NY2d 454, 459 [1989]; Empire Ins. Co. v Kaparos, 183 AD2d 566, 569 [1st Dept 1992].)
The Village also challenges the validity of Webster Town Board Resolution 87/98, the January 27, 1998 retail lease agreement between the Town and the Water Authority, and the DEC permit. The central claim is that these items do not cover territory within the Town outside of any existing and duly constituted water district, and that, especially, they cannot authorize an invasion of the so-called “Village’s Direct Retail District.” First, as demonstrated above, no Direct Retail District has been established, nor could one have been established under pertinent statutes. Accordingly, no “invasion” will occur. Second, any challenge to the validity of the DEC permit, or to the extent of activity authorized by the permit, must come in a proceeding appropriate to the purpose, including any administrative proceeding before the DEC. This action is not the appropriate forum nor is plaintiff a proper complainant. (Matter of Gerdts v State of New York, 210 AD2d 645, 646 [3d Dept 1994].) In any event, the DEC permit plainly authorizes the Water Authority to extend services to new Town water district extensions such as the proposed extension covering Heritage Park, and the statute provides for orderly *964 establishment of new water districts or extensions of existing water districts. (Town Law §§ 190, 209, 209-e.)
Third, any challenge to the right of the Town to serve and, by serving, contracting with the Water Authority to serve, Town residents, whether within or without existing water districts, does not affect the Village’s purported authority to serve such customers or territory outside Village limits. In the absence of a duly constituted water district running in favor of the Village, a creature not contemplated in any statute (see, above), and in the absence of a contract to supply water pursuant to Village Law § 11-1120, General Municipal Law §§ 118 and 118-a, and NY Constitution, article VIII, § 2-a, the Village has no basis to claim any right to serve the Heritage Park development. In other words, any successful challenge to defendants’ rights to serve the development would only require that the policy issue of which entity should supply water be faced anew by the Town, not that the Village automatically assume status as the default supplier. The Village points to no State or local law, ordinance, agreement or permit making it the default supplier of water outside of the Village in the area of the Heritage Park development. As stated above, the 1935 decision did not vest rights in the Village. It cannot claim such authority merely on the basis of long prior service to the Town under expired contracts. And it has no standing in its proprietary capacity to allege in this proceeding a violation by the signatories of the Town/Water Authority contracts of any of their terms. (Cf., Sopasis Constr. v Solomon, 233 AD2d 385 [2d Dept 1996]; Truty v Federal Bakers Supply Corp., 217 AD2d 951 [4th Dept 1995].)
It is true that Village Law § 11-1120 permits the Village to contract with individual customers along its watermains outside of Village boundaries. Because, as Shearer testified in the section 50-h hearing in related litigation, the area claimed by the Village to encompass the so-called Direct Retail District along the Village’s 12-inch Ridge Road main never was organized into a Town water district, the Village’s purported authority to serve residents along this main must derive from its statutory capacity to contract with individuals so situated. As defendants acknowledged at oral argument, and implicitly in their papers, there is a “general are [a]” which all parties expected “would remain on the Village of Webster System.” (Metzger affidavit If 20 [Mar. 26, 1999].) Evidently, the Town and Water Authority do not wish to lay a watermain alongside the Village’s 12-inch Ridge Road main, to avoid duplication *965 and because of “other engineering issues.” (Ibid.) The difficulty is that, because this area has not been organized into a Town water district covered by the Town’s previous agreements with the Village, and is not presently slated for conversion to Water Authority supply under the current plans submitted to the court, the residents and other customers therein will remain entangled in this long-running dispute between the Town and Village until agreement is reached by the parties concerning either conversion to Water Authority supply, or until a new long-term service agreement with these customers is offered to them by the Village and accepted by them. The fact that the Village may contract with these customers “individua[lly]” under Village Law § 11-1120 does not mean that it, in fact, has done so on a term basis simply by virtue of its past supply of water to them until now. The Village offers no proof of a long-term contract with these customers which would prevent organization of the area into a Town water district, or which would prevent the customers themselves to contract with other water suppliers. The fact that the Village has statutory authority to contract with these customers does not mean that the customers must contract with the Village. (Cf., 1981 Opns St Comp No. 81-48 [if the parties “cannot come up with mutually acceptable terms as to these matters, it may be necessary * * * to look elsewhere”].)
This case does not require a resolution of this question, however, which is in any event a policy one for the interested municipal entities, and for the individual customers within the area for that matter. This is because no statute, local law, permit restriction, or contract called to the attention of the court prevents organization of this territory into a Town water district or a Town water district extension as is proposed for Heritage Park. Section 109 of the Town Law permits such an extension because no existing water district is compromised. No Village water service contract to customers in the area is affected, if any exists at all, because this involves a new development of a previously unserviced area. (Cf., Rinas v Duryea, 278 App Div 419, supra.) And finally, the agreements between the Town and Water Authority, and the Water Authority’s DEC permit, clearly and expressly provide, contrary to the Village’s curious assertion to the contrary, that all new development in the Town will be served by the Water Authority, an express contractual term endorsed by the Village’s execution of the July 23, 1998 Interim Agreement, which provides for Water Authority “approval, inspections, maintenance and customer *966 service of new main extensions” within the Town (emphasis supplied). Accordingly, a determination in favor of defendants concerning Heritage Park does not foreclose further negotiations concerning the future fate of customers along the Village’s 12-inch Ridge Road main not within existing Town water districts. The Village is free to contract under section 11- 1120 with these customers, but it does not have any Direct Retail District in its favor, nor does it have any “vested right” to continue serving these customers. The fact that it owns the 12- inch Ridge Road watermain itself does not confer upon it the rights or entitlement the Village seeks in this action.
CONCLUSION
The motion for a preliminary injunction is denied. It is unnecessary on this record to reach the issues of irreparable harm and balance of equities.[6]

. As made clear at oral argument, the Interim Agreement was entered into in response to the Appellate Division’s decision in Matter of Briarwood Bldrs. v Shearer (252 AD2d 944 [4th Dept 1998]). Counsel for Shearer in that action appeared at oral argument herein, and represented that that action now lies dormant, though no releases accompanied execution of the July 23rd Interim Agreement and no stipulation of discontinuance was entered.

. Shearer does not explain how he came to this conclusion. Only two weeks earlier, he testified that he did not know how such a Direct Retail District was established.

. Defendants conceded at oral argument that the primary 12-inch Ridge Road watermain belongs to the Village (see, Village Law § 11-1122), but it is sharply disputed whether the Village laid the spur off the Ridge Road main from which Heritage Park will obtain its water. All relevant easements run in favor of the Town, not the Village, but it is clear on this record that Village water runs through the spur to customers served off Staci Lane and Heritage Park Drive.

. Under the Municipal Home Rule Law, villages may enact local laws which amend or supersede article 11 of the Village Law (1985 Opns St Comp No. 85-24; 25 NY Jur 2d, Counties, Towns, and Municipal Corporations, § 88 [1982]), but such authorization under the Municipal Home Rule Law would not include the capacity to create a special water district outside of village boundaries, as this would obviously trammel Municipal Home Rule Law § 10 (1) (ii) (d) (3) (limiting this power of supersession by a town to cases not involving, inter alia, a special or improvement district; see, Rozler v Franger, 61 AD2d 46, 53-54 [4th Dept 1978], affd on opn below 46 NY2d 760 [1978]). In any event, the Village has not alleged that such a local law superseding article 11 of the Village Law was enacted. (See generally, Turnpike Woods v Town of Stony Point, 70 NY2d 735, 737-738 [1987].)

. A provision of the Village Law permits continuation of a water district organized under the Town Law which became located in a village incorporated so as to embrace the entire territory of a town. (Village Law § 17-1712; see, Rinas v Duryea, 278 App Div 419, 420-421 [3d Dept 1951], affd without opn 304 NY 586 [1952].) The Town Law provides for establishment or extension of a water district wholly or partly within a village on consent of the village expressed in local law, ordinance, or resolution, and subject to a referendum on petition under the Municipal Home Rule Law or a permissive referendum under the Village Law. (Town Law §§ 190, 209.) Neither of these provisions are relevant here, nor are they alleged to somehow justify the Village’s Direct Retail District theory of the case. Even if such a district was created in favor of the Village, it would have no “vested right to serve its territory” outside of Village limits. (Cf., Rinas v Duryea, 278 App Div, at 420.)
In addition, the Office of the State Comptroller has opined “that a village may establish, by local law, a special benefit assessment district in a portion of the village for the purpose of providing water service to properties within the proposed district.” (1985 Opns St Comp No. 85-24 [emphasis supplied].) But this opinion has no application to the Village’s claim of creation of a Village water district outside of the Village gates, and in any event the opinion acknowledges the lack of statutory basis for its opinion in the Village Law, such authority being implied by the Comptroller from Municipal Home Rule Law § 10 (1) (ii) (e) (2). Nor may the Village “compel [the] formation of a water, district.” (1980 Opns St Comp No. 79-770.)

. Portions of the conclusion relating to scheduling matters have been deleted for publication.